**In re Maria E. LUNA, Debtor.**

**Jack McCULLOUGH, Trustee, Appellant,**

**v.**

**Maria E. LUNA, Appellee.**

**No. 86 C 3553.**

United States District Court, N.D. Illinois, E.D.

June 3, 1987.

Elaine C. Jensen, Chicago, Ill., for appellant.

Gloria E. Block, Chicago, Ill., for appellee.

## MEMORANDUM OPINION AND ORDER

NORDBERG, District Judge.

On March 26, 1986, the bankruptcy judge issued an oral opinion granting the debtor, Maria Luna's, motion for a turnover order requiring the Chapter 13 Trustee to return certain monies the debtor had paid pursuant to her confirmed Chapter 13 plan of reorganization. *In re Luna*, No. 85 B 8429 (Bank.N.D.Ill. March 26, 1986). The Trustee of Luna's Chapter 13 reorganization plan ("Trustee") has filed an appeal from that order. This court has jurisdiction over the appeal pursuant to 28 U.S.C. § 158(a). For the following reasons, the court affirms the order of the bankruptcy judge granting Luna's motion for a turnover order.

### Background

Maria Luna filed a petition for relief under Title 11 of the United States Code, Chapter 13 on July 3, 1985. Luna and her attorneys met with her creditors on September 12, 1985, and her Chapter 13 plan was approved the same day. This plan provided that Luna would "submit all, or such portion of [her] future earnings or other future income to the control of the Trustee as is necessary for the execution of the Plan." It also required her to submit $374.00 per month to the Trustee for sixty months. Between August and October of 1985, Luna made three payments under the Plan, totalling $613.90.

On October 21, 1985, the Trustee recorded a book transfer of Luna's funds to two creditors. Although he printed and mailed payment checks in all his open cases on October 25, 1985, he failed to prepare the two checks for Luna's creditors at this time. According to the Trustee, the failure to prepare these checks was caused by a computer malfunction in his office.

On October 28, 1985, the court granted Luna's motion to convert her Chapter 13 case to a Chapter 7 bankruptcy, and the Trustee was notified of the conversion. The order was entered on November 8, 1985. After the entry of the conversion order, the Trustee prepared and mailed to Luna's creditors the two checks which were erroneously excluded from the October 25, 1985 mailing.

On January 15, 1986, Luna filed a motion for a turnover order directing the Trustee to return the amounts distributed to creditors after the conversion order. The parties briefed the issue, and the Bankruptcy Court granted the motion for a turnover order in an oral opinion on March 26, 1986. In its decision granting the turnover order, the court relied principally on the Ninth Circuit's decision in *In re Nash*, 765 F.2d 1410 (9th Cir.1985).

The Trustee alleges that this order was improper for three reasons. First, the bankruptcy court failed to find that the payments to creditors had been distributed prior to the conversion. Second, the court erred in finding that the conversion divested the creditors of their right to the funds under the Chapter 13 plan. Finally, the Trustee argues that the bankruptcy court erred in relying on *In re Nash* to determine the outcome of Luna's motion for a turnover order. For the following reasons, the court rejects all three of these arguments.

■ First, the Trustee criticizes the Bankruptcy Judge for failure to make specific factual findings with respect to whether the creditors' right to the payments had been distributed prior to the conversion. Although the Bankruptcy Judge did not delineate his findings as such, his opinion implicitly rejects the Trustee's position on these factual issues.[1] The Trustee argues that his act of recording a transfer of funds on his books should be treated as a "distribution" under the Bankruptcy Code. Following this position, these funds were effectively dispersed prior to the conversion in bankruptcy, and are not available to the debtor upon conversion. According to the Trustee, the administrative foul-up in his computer system is no different than if the checks had been lost in the mail. The Bankruptcy Judge did not accept this position, and neither does this court. The operative date for the distribution of funds should not be determined by the Trustee's entry in a ledger, especially when the actual distribution may be days, or, as in this case, weeks after the Trustee recorded the proposed transfer. The Trustee has not cited any cases in support of his unusual definition of "distribution," and the court's research has not discovered any. Therefore, the court agrees with the finding, implicit in the Bankruptcy Court's opinion, that the funds at issue had not been distributed at the time of the conversion of Luna's action from a Chapter 13 reorganization to a Chapter 7 liquidation.

■ Next, the Trustee challenges the Bankruptcy Court's conclusion that the conversion set aside the creditors' right to funds under the confirmed plan. He appears to argue that, even if these funds were not distributed prior to the conversion of this case to a Chapter 7 proceeding, the creditors of the confirmed plan had a vested right to these payments, and he was authorized to distribute them after the conversion.

1. The Trustee contends that this case should be remanded to the bankruptcy judge because his factual findings are unclear. *See Enterprise Refining Co. v. Sector Refining Co.,* 781 F.2d 1116, 1123 (5th Cir.1986). Unlike the circumstances in *Enterprise Refining,* however, the Bankruptcy Court provided the parties and this court with a sufficient statement of its findings and conclusions in this case. The opinion is not so cursory that the court cannot discern the basis of the Bankruptcy Court's decision. The court notes that the Trustee's present complaint regarding the adequacy of the Bankruptcy decision is ironic, given the fact that the Bankruptcy Judge offered to write an opinion, which the Trustee apparently did not accept. *See* Transcript at 7.

The Trustee's position is supported by dictum in *In re Lennon*, 65 B.R. 130, 136–38 (Bank.N.D.Ga.1986). In *Lennon*, debtors in an unconfirmed Chapter 13 plan converted the action to a Chapter 7 liquidation, and the Chapter 13 trustee moved for an order directing the disposition of undistributed payments to the Chapter 13 plan. The court held that since the Chapter 13 plan was never confirmed, the undistributed funds must be repaid to the debtor. *Id.* at 135. In so holding, the court suggested that, if the plan had been confirmed, then the creditors would have had a vested right in the proceeds of the plan which survived a debtor's conversion of his reorganization into a liquidation proceeding. *Id.* at 138. This position cannot be reconciled with 11 U.S.C. § 348(e) of the Code, however, which provides, that "conversion of a case under section 706, 1112 or 1307 of this title terminates the service of any trustee or examiner that is serving the case before such conversion."[2] As the language of this section unambiguously indicates, the Code precludes the Trustee from taking any action with respect to these funds after the conversion. *In re Perkins*, 36 B.R. 618, 620 (Bank.M.D.Tenn.1983) (Chapter 13 trustee loses all authority to act when the conversion becomes effective). *Cf. In re Nash*, 765 F.2d 1410, 1413 (9th Cir.1985) (once confirmed plan is dismissed, Trustee has no authority to continue making distributions in accordance with the plan). Thus, the court finds that a creditor's right to payment vests not at the time of confirmation, but at the time of *distribution* by a Trustee authorized to act under the Code. *See In re Richardson*, 20 B.R. 490, 492 (Bank.W.D.N.Y.1982); *Nash, supra. Cf. Resendez v. Lindquist*, 691 F.2d 397, 400 (8th Cir.1982) (Bright, J., dissenting); *In re Peters*, 44 B.R. 68, 73 (Bank.M.D.Tenn. 1984); *In re Wanderlich*, 36 B.R. 710, 714 (Bank.W.D.N.Y.1984); *In re Doyle*, 11 B.R. 110, 111 (Bank.E.D.Pa.1981) (once case is converted, order confirming original plan no longer effective).

**2.** This position also conflicts with 11 U.S.C. § 1307(b), which provides that the debtor has an absolute right to dismiss a Chapter 13 peti-

■ The Trustee's final assertion of error concerns the Bankruptcy Court's reliance on *In re Nash*, 765 F.2d 1410 (9th Cir.1985), in granting the motion for a turnover order. In *Nash*, the trustee distributed funds held pursuant to a confirmed Chapter 13 plan after the plan was dismissed. The debtors sued the trustee to collect the funds distributed after the dismissal. Noting the voluntary nature of a Chapter 13 proceeding, the court rejected the trustee's argument that the debtors continued to be bound by the plan after its dismissal. *Nash*, 765 F.2d at 1413. The court held that the debtor was entitled to the funds because

[A] Chapter 13 dismissal 'revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title.' 11 U.S.C. § 349(b)(3). The legislative history of § 349(b) states that '[t]he basic purpose of the subsection is to undo the bankruptcy case, as far as practicable, and to restore all property rights to the position in which they were found at the commencement of the case.' S.Rep. No. 989, 95th Cong., 2d Sess. 49, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5835. We have previously stated that § 349 'obviously contemplates that on dismissal a bankrupt is reinvested with the estate, subject to all encumbrances which existed prior to the bankruptcy.' *In re Income Property Builders, Inc.*, 699 F.2d 963, 965 (9th Cir.1982) (per curiam).

*Id.* at 1414.

The court acknowledged, however, that conversion of a Chapter 13 proceeding to a Chapter 7 proceeding may produce a different result:

The defendants argue that wage deductions held by a trustee when a Chapter 13 case is dismissed no longer belong to the debtor. They rely on *Resendez v. Lindquist*, 691 F.2d 397, 399 (8th Cir. 1982), and *In re Giambitti*, 27 B.R. 492, 493 (Bank.D.Or.1983), both of which hold

tion at any time. *See In re Nash*, 765 F.2d 1410, 1413 (9th Cir.1985).

that all of the property of a Chapter 13 estate, including wage deductions, must be delivered to the Chapter 7 trustee when a Chapter 13 case is converted to Chapter 7. *Contra, In re Bullock,* 41 B.R. 637, 641 (Bank.E.P.Pa.1984). Even assuming that *Resendez* and *Giambitti* correctly hold that wage deductions received prior to dismissal no longer belong to a Chapter 13 debtor during the administration of the plan, those cases involved a conversion to Chapter 7. They do not address the fact that dismissal revests the property of the estate in the debtor. 11 U.S.C. § 349(b)(3). No similar Bankruptcy Rule or Code provision contemplates the revesting of the estate property upon conversion to Chapter 7.

*Id.* In the present case, the Bankruptcy Judge did not discuss the *Nash* court's recognition of a possible distinction between conversion and dismissal of a Chapter 13 proceeding. After analyzing the statutory provisions relating to conversion of a Chapter 13 estate to a Chapter 7 estate, the court concludes that, upon conversion, the debtor is entitled to the undistributed, after-acquired wages submitted to the Chapter 13 trustee pursuant to the plan.

By definition, the property of the Chapter 7 estate includes all legal or equitable interests of the debtor in property as of the commencement of the case, and excludes after-acquired wages. 11 U.S.C. §§ 541(a)(1), 541(a)(6). A Chapter 13 estate includes all § 541 property, as well as earnings from services performed by the debtor after commencement of the case. 11 U.S.C. § 1306(a)(2). The difference between these two statutory definitions raises the issue at the heart of this appeal: what is the status of § 1306(a) after-acquired funds once a case is converted to a Chapter 7 proceeding? Although there exists a wide variety of viewpoints on this issue,[3] this court agrees with the sound reasoning set forth in *In re Peters,* 44 B.R. 68 (Bank.W.D.Tenn.1984), that after-acquired wages paid into a Chapter 13 plan

do not become part of the Chapter 7 estate after a conversion.

In *Peters,* the debtors converted their confirmed plan to a Chapter 7 plan, and sought a turnover order for the undistributed after-acquired wages paid pursuant to the plan. The court noted that conversion of a Chapter 13 proceeding to a Chapter 7 proceeding is governed by 11 U.S.C. § 348(a), which provides that conversion does not change the date of the filing of the petition or the commencement of the case. In addition, the Code also provides that the property of the estate is determined as of the date of the commencement of the case. 11 U.S.C. § 541. Relying on these two sections, the court held that, after a case has been converted from a Chapter 13 case to a Chapter 7 case, the court must look to the date that the Chapter 13 case was filed to determine which property should be considered part of the Chapter 7 case. *Peters,* 44 B.R. at 70. The court concluded:

> The funds in question in this case were payroll deductions paid into the estate after the commencement of the Chapter 13 case. Under 11 U.S.C. § 541, the property of the Chapter 7 case consists of 'all legal or equitable interests of the debtor in property as of the commencement of the case.' Since the debtor did not acquire any interest in the undistributed wages until after the commencement of his case, these funds are not property of his Chapter 7 estate.

*Id.* See also *In re Shattuck,* 62 B.R. 14 (Bank.D.N.H.1986); *In re Lepper,* 58 B.R. 896 (Bank.D.Md.1986); *In re Bullock,* 41 B.R. 637 (Bank.E.D.Pa.1984); *Hannan v. Kirschenbaum,* 24 B.R. 691 (Bank.E.D.N.Y.1982).

As the *Peters* court noted, the conclusion that these after-acquired wages never become part of the Chapter 7 estate is supported by the language of the Code and its legislative history. *Peters,* 44 B.R. at 71. The legislative history reveals a clear congressional intent to encourage debtors to voluntarily commence Chapter 13 proceedings:

**3.** *See In re Lepper,* 58 B.R. 896, 899 n. 3 (Bank. D.Md.1986) (collecting cases).

The benefit to the debtor of developing a plan of repayment under Chapter 13, rather than opting for liquidation under Chapter 7[,] is that it permits the debtor to protect his assets.... Under Chapter 13, the debtor may retain his property by agreeing to repay his creditors. Chapter 13 also protects a debtor's credit standing far better than a straight bankruptcy, because he is viewed by the credit industry as a better risk. In addition, it satisfies many debtors' desire to avoid the stigma attached to straight bankruptcy and to retain the pride attendant on being able to meet one's obligations. The benefit to creditors is self-evident: their losses will be significantly less than if their debtors opt for straight bankruptcy.

*Peters*, 44 B.R. at 71, citing H.R.Rep. No. 95–595, 95th Cong., 2d Sess. 1, 118, *reprinted in* 1978 U.S.Code Cong. & Admin. News 5787, 5963, 6079. The federal policy of encouraging reorganization instead of liquidation also supports the court's conclusion that this money paid into a Chapter 13 plan is not property of the Chapter 7 estate. As the court noted in *In re Shattuck,* 62 B.R. 14, 16 (Bank.D.N.H.1986):

[I]t is certainly in the public interest to encourage good faith efforts by debtors to try to repay their debts through a Chapter 13 plan. When that effort fails, it would not be fair to penalize them by disposing of monies which clearly would have been 'after-acquired assets' had they simply chosen to file a liquidating Chapter 7 proceeding in the first instance.

*See also In re Lepper,* 58 B.R. 896 (Bank. D.Md.1986); *In re Bullock,* 41 B.R. 637 (Bank.E.D.Pa.1984).

The court agrees with the reasoning of the *Peters* case. If Luna had filed a Chapter 7 proceeding instead of attempting to reorganize, her after-acquired wages would have been unavailable to creditors. She should not be penalized for trying to reorganize. Section 348, which determines the operative date for the filing of her Chapter 7 proceeding, protects her from being penalized by providing that the Chapter 7 estate is deemed to have been filed at the time the Chapter 13 estate was filed. Accordingly, the court finds that Luna is entitled to these funds, and affirms the Bankruptcy Judge's order granting her motion for a turnover order.[4]

### Conclusion

For the reasons set forth above, the court finds that Luna's after-acquired wages were not part of her Chapter 7 estate. Accordingly, the court affirms the order of the Bankruptcy Judge granting Luna's motion for a turnover order.[5]

---

**4.** The Eighth Circuit reached a contrary result in *Resendez v. Lindquist,* 691 F.2d 397 (8th Cir. 1982). In *Resendez,* the court acknowledged that, under Section 348(a), the Chapter 7 estate is deemed filed at the time the Chapter 13 case was filed; however, it held that the voluntary nature of these payments precluded the Chapter 13 trustee from returning them to the debtor or claiming them as exempt. *Id.* at 399. The court did not discuss the different definitions of "estate" under Chapter 7 and Chapter 13, nor did it explain how retention of these funds could be reconciled with the acknowledged fact that § 348(a) provides that the Chapter 7 estate commenced at the time the Chapter 13 proceeding

was filed. *See In re Lennon,* 65 B.R. 130, 133 (Bank.N.D.Ga.1986) (rejecting *Resendez* analysis); *Peters,* 44 B.R. at 72. *See also Resendez,* 691 F.2d at 399–400 (Bright, J., dissenting from majority opinion).

**5.** Even if these funds were considered part of Luna's estate, the court would still affirm the Bankruptcy Judge's turnover order, because these funds may be exempted from the debtor's Chapter 7 estate. *See In re Wanderlich,* 36 B.R. 710, 716 (Bank.W.D.N.Y.1984); *In re Richardson,* 20 B.R. 490, 492 (Bank.W.D.N.Y.1982).