In re Ernest E. REDICK, Jeffrey B. and Sherrie L. Dewar, Vincent Van Tol, Walter and Kathy F. Hoye, Jr., Randy M. and Charlene E. Briggin, Audrey Allen, Daniel L. and Joan Voight, Kathleen Ruddy, Robert W. and Priscilla King, Michael P. and Sandra K. Wilke, Peter W. and Margaret Siewert, Richard D. Hodson, Randall G. Miller, Terry L. LeClear, Ned & Genetha Campbell, Sally Jo Hicks, Boretha F. Hill, Linda A. Ridgeway, Renee M. Hatfield, Debtors.

Bankruptcy Nos. 81–00291, 82–00604, 82–01183, 82–01191, 82–01225, 83–00422, 83–00593, 83–00873, 84–07696, 84–07717, 84–07724, 84–07835, 84–08042, 84–08074, 84–08156, 84–08219, 85–08132, 85–08260 and 86–07622.

United States Bankruptcy Court, E.D. Michigan, S.D., at Flint.

Dec. 1, 1987.

**882**

James L. Rowe, Jon T. Warren, Flint, Mich., for debtors.

Carl L. Bekofske, Flint, Mich., Chapter 13 trustee.

Michael A. Mason, Flint, Mich., Chapter 7 trustee.

Michael Mason, Flint, Mich., Chapter 7 trustee.

George B. Rasch, Flint, Mich., Chapter 7 trustee.

Mark C. McCabe, Flint, Mich., Chapter 7 trustee.

## MEMORANDUM OPINION REGARDING MOTIONS BY DEBTORS FOR TURNOVER OF FUNDS

ARTHUR J. SPECTOR, Bankruptcy Judge.

The facts of these cases have been stipulated by the debtors, the Chapter 7 trustees, and the Chapter 13 trustee, and are as follows. Each of the first fifteen cases listed above was commenced under Chapter 13 of the Bankruptcy Code prior to October 9, 1984, the effective date of the BAFJA.[1] The remainder were filed after October 9, 1984 and so the BAFJA amendments are applicable to them. However, with respect to the narrow issue in dispute here, the amendments are not material. Each had a Chapter 13 plan confirmed and before the plan could be completed, the case was converted to Chapter 7. At the time of conversion, the Chapter 13 trustee was holding funds, presumably derived entirely from post-petition wages earned by the debtors, which had been collected prior to the date of conversion, but had not yet been distributed to creditors pursuant to each debtor's particular plan. The Chapter 13 trustee has refused to distribute these remaining funds to creditors, to return them to the debtors, or to turn them over to the respective Chapter 7 trustees. Accordingly, in several of these cases the debtors have filed motions to compel the Chapter 13 trustee to turn over these funds to them.[2]

The common question of law presented is this: When a Chapter 13 case is converted to a case under Chapter 7 should the funds received by the Chapter 13 trustee prior to conversion but not yet distributed be delivered to the Chapter 7 trustee, the debtor, or to the debtor's creditors according to the terms of the Chapter 13 plan?

The conflict over who has the strongest claim to the withheld funds arises from the fact that a Chapter 13 estate is constituted differently than a Chapter 7 estate. The term "property of the estate" is defined generally by 11 U.S.C. § 541(a) as including all of the property of the debtor as of the commencement of the case. Earnings from services rendered by individual debt-

---

1. BAFJA, the Bankruptcy Amendments and Federal Judgeships Act of 1984, enacted July 10, 1984, P.L. 98–353, Title III, Subtitle K, § 553, 98 Stat. 392, provides ... "the amendments made by this title shall become effective to cases filed 90 days after the date of enactment of this Act."

2. It should be noted that none of these cases involve the situation where the Chapter 13 trustee received funds on behalf of a debtor whose Chapter 13 plan was never confirmed, or where the Chapter 13 trustee received funds subsequent to the time of conversion. All parties agree that under those circumstances, the funds should be returned to the debtor.

ors subsequent to the commencement of the case are expressly excluded from the estate by § 541(a)(6). The Chapter 13 estate, on the other hand, contains all of the property which the debtor possessed prior to the commencement of the case *and* "earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted to a case under Chapter 7 or 11 of this title, whichever occurs first." 11 U.S.C. § 1306(a)(2).

When a case under one chapter of the Bankruptcy Code is converted to a proceeding under a different chapter, § 348(a) provides:

> Conversion from a case under one chapter of this title to a case under another chapter of this title constitutes an order for relief under the chapter to which the case is converted, but, except as provided in subsections (b) and (c) of this section [not applicable here], does not effect a change in the date of the filing of the petition, the commencement of the case, or the order for relief.

Thus, when a case is converted from Chapter 13 to Chapter 7, the Chapter 7 estate consists only of the types of property set out in § 541(a) which the debtor possessed as of the date of the original petition for relief. Consequently, it would not seem to include any wages earned between the date of the original petition and the date of conversion, even though those wages had been part of the Chapter 13 estate up until the date of conversion.

A literal reading of § 348(a) leads to the possibly anomalous result that wages which were property of the debtor's bankruptcy estate[3] so long as the case continued under Chapter 13 are retroactively withdrawn from that estate when the case is converted to Chapter 7. Under this construction, since they are not property of the estate, the funds held by the Chapter 13 trustee ought to be returned to the debtor, as they were not property of the estate as of the commencement of the case. However, many courts have been uneasy with this result, and there has been a split of authority as to whether the debtor or the Chapter 7 trustee is the appropriate recipient of the funds. *Compare, In re DeVos,* 76 B.R. 157 (N.D.Cal.1987); *In re Luna,* 73 B.R. 999 (N.D.Ill.1987); *In re Shattuck,* 62 B.R. 14 (Bankr.D.N.H.1986); *In re Lepper,* 58 B.R. 896, 14 C.B.C.2d 1040 (Bankr.D.Md. 1986); *In re Peters,* 44 B.R. 68, 11 C.B.C.2d 881 (Bankr.M.D.Tenn.1984); *In re Bullock,* 41 B.R. 637, 10 C.B.C.2d 1292 (Bankr.E.D. Pa.1984); *In re Oliphant,* 40 B.R. 577 (Bankr.N.D.Tex.1984); *In re McFadden,* 37 B.R. 520 (Bankr.M.D.Pa.1984); *In re Hannan,* 24 B.R. 691, 9 B.C.D. 1151, 7 C.B.C.2d 750 (Bankr.E.D.N.Y.1982); and *In re Richardson,* 20 B.R. 490, 9 B.C.D. 197 (Bankr. W.D.N.Y.1982), wherein the courts held that the funds on hand at the time of conversion should be returned to the debtor; *with In re Resendez,* 691 F.2d 397 (8th Cir.1982); *In re Kao,* 52 B.R. 452 (Bankr.D. Ore.1985); *In re Williams,* 52 B.R. 15 (Bankr.W.D.Pa.1985); *In re Wanderlich,* 36 B.R. 710, 11 B.C.D. 467 (Bankr.W.D.N. Y.1984); *In re Tracy,* 28 B.R. 189, 10 B.C. D. 541, 8 C.B.C.2d 440 (Bankr.D.Me.1983); *In re Giambitti,* 27 B.R. 492 (Bankr.D.Ore. 1983); and *In re Stinson,* 27 B.R. 18, 10 B.C.D. 354, 8 C.B.C.2d 16 (Bankr.D.Ore. 1982), *rev'd in unpublished decision,* [opinion published as appendix to *In re Kao,* 52 B.R. 452.] (Civ. Nos. 83–43, 44–RE, April 26, 1983), wherein the courts held that the funds should be turned over to the Chapter 7 trustee.

---

**3.** It is not entirely clear, for that matter, whether there is any Chapter 13 estate at all after confirmation. Section 1327(b) provides that upon confirmation of the plan, property of the estate "vests" in the debtor. Some courts have taken this to mean that there is no longer any bankruptcy estate. *See In re Mason,* 51 B.R. 548 (D.Ore.1985); *In re Dickey,* 64 B.R. 3 (Bankr.E. D.Va.1985); *In re Adams,* 12 B.R. 540, 8 B.C.D. 78, 4 C.B.C.2d 1054 (Bankr.D.Utah 1981); *In re Stark,* 8 B.R. 233, 7 B.C.D. 229 (Bankr.D.Ohio 1981). Others take a contrary view. *See In re Nash,* 765 F.2d 1410, 1414 (9th Cir.1985); *In re Aneiro,* 72 B.R. 424, 15 B.C.D. 1069, 16 C.B.C.2d 1070 (Bankr.S.D.Cal.1987); *In re Clarke,* 71 B.R. 747 (Bankr.E.D.Pa.1987); *In re Root,* 61 B.R. 984 (Bankr.D.Colo.1986). The conversion of a case to Chapter 7 causes several conceptual and practical problems with the subsequent administration of the case; however, we need not decide this larger, more fundamental, question to resolve the issue at bench.

We think the correct interpretation is the one which is most consistent with the plain reading of §§ 348(a), 541(a), and 1306(a); and therefore hold that when determining whether something is an asset of the Chapter 7 estate, it is the date of the original petition rather than the date of conversion which controls. Not only is this result in accord with the general maxims of statutory construction, it is also consistent with policies underlying the availability of Chapter 13 relief. As the court noted in *Peters*, Congress wished to encourage debtors to opt for relief under Chapter 13 rather than to file a Chapter 7 petition. Towards that end, Congress drafted Chapter 13 to allow debtors to retain possession of their property and broadened the category of debts which may be discharged. Although *Peters* did not point specifically to any legislative history, it considered the effect of § 348(a) as another incentive for debtors to attempt to pay their debts if possible:

> Since this section treats the date of commencement of the Chapter 13 case as the date of commencement of the Chapter 7 case after conversion, the debtor is not penalized for originally pursuing a Chapter 13 case instead of a Chapter 7 case. If the debtor is unable to succeed under Chapter 13, he is treated as if he had originally filed a petition under Chapter 7.

*In re Peters*, 44 B.R. at 71. Following this reasoning, funds earned by the debtor post-petition but not yet distributed to creditors under the Chapter 13 plan are not part of the Chapter 7 estate. The Chapter 7 trustees have no claim to these undistributed funds.

Courts which have concluded that the undistributed wages belong to the Chapter 7 trustee have supported that conviction with the declaration that it would be "unfair" to permit funds which were voluntarily remitted to the Chapter 13 trustee for distribution to unsecured creditors to now be returned to the debtor.[4] The potential inequity visited upon pre-petition unsecured creditors upon conversion is discussed in *Tracy*. The court noted that according to § 348(d), claims that arise after the commencement of the case, but prior to conversion (except for administrative claims), are treated as if they were incurred just before the commencement of the case. Thus, for distribution purposes, all holders of pre-conversion claims, whether the claims arose pre- or post-petition are treated equally, and it is the date of conversion rather than the date of filing which determine the nature of the claim. That being so, the court concluded that it followed "logically" that the estate from which pre-petition and pre-conversion creditors receive a distribution should also be determined as of the date of conversion. *In re Tracy*, 28 B.R. at 190. *Also see In re Winchester*, 46 B.R. 492, 495 (9th Cir. BAP 1984). Withdrawing the pre-conversion wages from the pool of assets available for distribution would work to the detriment of the pre-petition creditors. Therefore, *Tracy* held that the Chapter 7 estate is determined as of the date of conversion. However, *Tracy's* conclusion is flawed; the fact that the funds do not enter the Chapter 7 estate does not necessarily mean that the debtor winds up with them.

The Chapter 13 trustee agrees with *Tracy* that giving the funds on hand to the debtor is unfair to the creditors. To the debtor, he says, the receipt of those funds is an unexpected and uncertain windfall. Drawing on personal experience, the trustee contends that debtors converting from Chapter 13 to Chapter 7 do not consider the possibility of receiving wages already assigned to the trustee upon conversion; instead, such debtors ordinarily discover the return of those funds to be a bonus. Moreover, the size of that bonus depends largely on whether conversion occurs a long time or a short time after the Chapter 13 trustee's last bi-monthly distribution to credi-

---

**4.** Several of the cases which hold that the funds belong to the Chapter 7 trustee may be distinguished. For example, in *Resendez, Wanderlich,* and *Giambitti,* the debtors did not assert that the undistributed funds were not part of the Chapter 7 estate; they argued only that those funds could be claimed as exempt upon conversion. Thus, neither the Eighth Circuit Court of Appeals, nor the bankruptcy courts, respectively, had occasion to determine the issue here.

tors. If, for example, the debtor converts to Chapter 7 a day before distribution is to be made, the debtor will receive all of the accumulated wage assignments; on the other hand, if conversion occurs the day after a distribution, the debtor's refund is negligible.[5] The Chapter 13 trustee thus characterizes the debtor's receipt of assigned wages as a "lottery" in which the debtor wins funds at the expense of his or her creditors. The trustee contends that the creditors, not the debtor, should be the beneficiaries of the funds on hand at the time of conversion.

The observation that returning undistributed wages to the debtor instead of his or her creditors is inequitable is far from frivolous. We can take notice that there are occasions where a Chapter 13 case proceeds for some time without any payments being made to general unsecured creditors.[6] Eventually, upon conversion, these creditors must share an estate which has not grown—or worse, depreciated—during the course of the Chapter 13 proceeding, and must share that "pie" with more creditors. Similarly, accepting the trustee's practical observations as more or less accurate, we see no compelling reason why debtors should receive funds that, in all probability, they never knew were theirs, and which played no part in their decision to convert to Chapter 7.

The Chapter 13 trustee's argument relies upon *dictum* in *In re Lennon*, 65 B.R. 130, 136, 15 C.B.C.2d 756 (Bankr.N.D.Ga.1986):

> When confirmed, the plan governs the relations of the parties and the debtor is bound to make the specified payments provided in the confirmed plan. These payments are specifically earmarked and

set aside for distribution to creditors provided for by the confirmed plan. To the extent that the confirmed plan provides for payment from debtor's future earnings and the debtor actually makes payment to the trustee pursuant to that plan, the debtor is not entitled to possession nor is the debtor vested with title to such payments. Sections 1306(b) and 1327(b) specifically except such payments from their provisions since the debtor's right of possession and vesting of title is limited to all sums and property not otherwise provided for in the confirmed plan or confirmation order. These exceptions to possession and vesting of title in debtor indicate that debtor is to have no continuing interest in payments actually made pursuant to a confirmed plan. It is logical to infer that Congress intended that any payments actually made to the trustee pursuant to a confirmed plan would be placed in the trustee's possession and vested in the creditors provided for by such plan. The creditors' right to payment matures at the time each payment is made to the trustee pursuant to the confirmed plan. Therefore, undistributed payments which are made pursuant to a confirmed plan and thus set aside for creditors must be paid to such creditors in accordance with the provisions of the plan whether the case proceeds as a Chapter 13, converts to Chapter 7, or is dismissed.

The trustee argues that *Lennon's* conclusion is supported by § 1326(b),[7] which directs that the Chapter 13 "trustee shall make payments to creditors under the plan."

---

**5.** Although at one time it was an open question whether a debtor's request to convert his Chapter 13 case to Chapter 7 stood as the operative act of converting, or whether an actual "order of conversion" was necessary, this is no longer the case. Bankruptcy Rule 1017(d) now plainly provides that: "A Chapter 13 case shall be converted without court order on the filing by the debtor of a notice of conversion pursuant to § 1307(a)." Thus, it would be a very simple matter for a debtor, cognizant of the trustee's bi-monthly distribution schedule, to choose to convert on the day prior to the next distribution and thereby recover all of the undistributed

payments for the last two weeks. In some trustees' offices, payments may not be more often than monthly and so the problem would there be exacerbated.

**6.** Payments may have gone entirely to pay secured and priority claims.

**7.** The BAFJA amendments added a new § 1326(a), thereby re-numbering what was § 1326(b) as § 1326(c). Therefore, for those cases filed after October 9, 1984, this statutory citation should be § 1326(c).

In *In re Luna, supra,* the court rejected *Lennon's* creditor-vesting analysis.

This position cannot be reconciled with 11 U.S.C. § 348(e) of the Code, however, which provides, that "conversion of a case under section 706, 1112 or 1307 of this title terminates the service of any trustee or examiner that is serving the case before such conversion."[2] As the language of this section unambiguously indicates, the Code precludes the Trustee from taking any action with respect to these funds after the conversion. *In re Perkins,* 36 B.R. 618, 620 (Bankr.M.D. Tenn.1983) (Chapter 13 trustee loses all authority to act when the conversion becomes effective). *Cf. In re Nash,* 765 F.2d 1410, 1413 (9th Cir.1985) (once confirmed plan is dismissed, Trustee has no authority to continue making distributions in accordance with the plan). Thus, the court finds that a creditor's right to payment vests not at the time of confirmation, but at the time of *distribution* by a Trustee authorized to act under the Code.

---

[2] This position also conflicts with 11 U.S.C. § 1307(b), which provides that the debtor has an absolute right to dismiss a Chapter 13 petition at any time. *See In re Nash,* 765 F.2d 1410, 1413 (9th Cir.1985).

Neither *Luna* nor *Nash* dispute that § 1326(b) requires the Chapter 13 trustee to pay the funds received by him to the creditors, at least while there still is a Chapter 13 case pending. However, their logic is that once the case is dismissed or converted to Chapter 7, the Chapter 13 trustee ceases acting as such and the plan and order confirming the plan disintegrate.

If *Luna* is correct, and so the undistributed funds in the hands of the Chapter 13 trustee must be turned over to the debtor when the debtor converts the case to Chapter 7, a creditor who anticipates that result would seek an order compelling the trustee to make daily distributions. The creditor would correctly argue that once the debtor has complied with his obligation to see to it that post-petition earnings were paid to the trustee, the creditor has the right to his share since the trustee is under the statutory duty to disburse to creditors. He could also note that § 1326(b) does not direct the trustee to "accumulate" funds for two weeks before making distribution; the only statutory direction is that the Chapter 13 trustee "make payments" pursuant to the terms of the plan and the order confirming the plan. It would seem that such a motion would have merit and ought to be granted. Had daily distribution been the practice, the question involved in these cases would never have arisen since no undistributed funds would ever have existed when these cases converted to Chapter 7. Needless to say, daily distribution would create an administrative nightmare: trustee staff expenses would skyrocket and *de minimis pro rata* distributions to a multitude of creditors would result in huge bank processing expenses.

When parties need to resort to extraordinary and onerous procedures in order to get around a principle which seems to obstruct them from vindicating their rights, there is good cause to wonder whether the principle which obstructs them is valid. The principle which seems to obstruct a creditor from obtaining his share of the funds voluntarily paid by a debtor to the trustee before the case converts to Chapter 7 is that the Chapter 13 trustee ceases as a trustee pursuant to § 348(e). *Luna,* 73 B.R. at 1002. However, it is not entirely true that the Chapter 13 trustee ceases to be a Chapter 13 trustee when the case converts to Chapter 7. If that were true, then he would certainly be under no duty to render a final account as Chapter 13 trustee. *See* Bankruptcy Rule 1019(6). Even if the Chapter 13 trustee no longer has that title, and no longer has the absolute duty to distribute the funds to the creditors pursuant to the confirmed Chapter 13 plan because the order confirming the plan and the plan have disintegrated, the Chapter 13 trustee is, at the very least, a custodian of funds having the duty to deliver them to the party with the best claim to them. Therefore, the *Luna* analysis ends the inquiry at the very point it should begin, that is, who has the better title to the funds the former Chapter 13

trustee is holding—the debtor or the creditors?

 If, on the day the debtor delivered his wages to the trustee the creditors had a right to obtain an order to compel the trustee to distribute those wages to them, then the creditors obviously had a vested right to those payments. If they could not obtain such an order, then clearly on that date they had no vested right to payment. Since we have previously indicated that creditors ought to be able to obtain an order compelling the trustee to make distributions daily in order to obviate the problem which arises in these cases, it would appear that the *Lennon* analysis is sound. Thus, we hold that once the debtor has voluntarily parted with his wages and delivered them to the custody of the trustee in performance of a voluntary Chapter 13 plan which has been confirmed by the Court, the creditors have a vested right to receive those payments pursuant to the plan. What this holding means is that even after the disintegration of the plan, the order confirming the plan and the trustee's status as an official "Chapter 13 trustee", the "trustee" is holding the undistributed funds as an agent for the creditors. In essence, when he received those funds from the debtor, he did so as the agent for the creditors, and so the fact that he never got around to writing out individual checks for each of them is immaterial. The mere happenstance of the delay inherent in accounting for the receipt of the debtor's wages and the preparing and mailing of checks should not defeat vested statutory rights. "The delay in distribution is the act of the law; it is a necessary incident to the settlement of the estate." *Thomas v. Western Car Co.*, 149 U.S. 95, 116–117, 13 S.Ct. 824, 833, 37 L.Ed. 663 (1893); *Vanston Bondholders Protection Committee v. Green*, 329 U.S. 156, 163, 67 S.Ct. 237, 240, 91 L.Ed. 162 (1946); *In re Timbers of Inwood Forest Assoc.*, 793 F.2d 1380, 1385–1386 (5th Cir.1986), *aff'd en banc*, 808 F.2d 363 (5th Cir.1987), *cert. granted*, —— U.S. ——, 107 S.Ct. 2459, 95 L.Ed.2d 868; *cf Nicholas v. United States*, 384 U.S. 678,

683, 86 S.Ct. 1674, 1679, 16 L.Ed.2d 853 (1966); *In re Southwest Aircraft Services, Inc.*, 831 F.2d 848 (9th Cir.1987).

We note that there are conflicting policy determinations which abound in this area. However, we feel it is our duty to decide these issues, if possible, by harmonizing the apparently conflicting statutory language of the various provisions of Chapter 13 and to find the resolution which does the least violence to those underlying policies. A faithful and literal reading of the statute must prevail over a speculative, if well-intentioned, policy expression. This is particularly true when there are opposing policy considerations which are equally persuasive.

We feel that the resolution we have chosen supports the policy of finality in that once the debtor has voluntarily paid a debt, he has no claim for the return of the payment. This policy was acknowledged explicitly by Congress in § 524(f). Moreover, this resolution has positive practical ramifications. For one, it obviates the need for creditors to insist on daily distributions to avoid what they might perceive to be an unfair windfall to the debtor. Secondly it avoids the "lottery" approach to conversion which the Chapter ·13 trustee cogently argues would otherwise exist, which would open the bankruptcy process to legitimate criticism.

For the foregoing reasons, we hold that the funds held by the Chapter 13 trustee when each Chapter 13 case converted to Chapter 7 are not property of the Chapter 7 estate, and that title to those funds passed to the creditors pursuant to the confirmed Chapter 13 plans when the plan payments were received by the Chapter 13 trustee prior to the date of conversion to Chapter 7. Therefore these funds should be disbursed by the former Chapter 13 trustee to the creditors pursuant to the terms of the respective Chapter 13 plans. Upon submission, orders consistent with the holdings in each of these cases will be entered.[8]

---

**8.** For what it is worth, our holding implicitly rejects the majority opinion in *Nash,* and adopts

the dissent there and the *dictum* in *Lennon*. We understand that *Nash* is being reconsidered at

the request of the Chapter 13 trustee.