**In the Matter of Harold and Nancy BURNS, Debtors.**

**George W. LEDFORD, Plaintiff,**

**v.**

**Harold BURNS and Nancy Burns and Christopher Hawk and Veterans Administration District Counsel and Third National Bank and Wright Patt Credit Union and Dayton Power and Light and Modern Finance Co. and Coldwell Financial and Greene Memorial Hospital and Household Finance Corp. and Greene Memorial Hospital and Paul D. Gilbert, Chapter 7 Trustee, Defendants.**

Bankruptcy No. 3–84–02591.
Adv. No. 3–88–0022.

United States Bankruptcy Court,
S.D. Ohio, W.D.

Aug. 9, 1988.

George W. Ledford, Englewood, Ohio, Chapter 13 trustee.

Stephen D. Miles, Dayton, Ohio, for plaintiff.

Chris Hawk, Dayton, Ohio, for debtor.

Paul D. Gilbert, Dayton, Ohio, Chapter 7 trustee.

THOMAS F. WALDRON, Bankruptcy Judge.

This proceeding, which arises under 28 U.S.C. § 1334(b) in a case referred to this court by the Order Of Reference entered in this district on July 30, 1984, is determined to be a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A)—matters concerning the administration of the estate, (B)—allowance or disallowance of claims against the estate or exemptions from property of the estate and (O)—other proceedings affecting the liquidation of assets of the estate.

On November 23, 1984, the debtors, Harold and Nancy Burns, filed a joint petition in a Chapter 13 case. On January 28, 1985, their proposed plan was confirmed. On February 2, 1988, the debtors converted their case to Chapter 7 (11 U.S.C. § 1307). On February 2, 1988, the date of the conversion, the Chapter 13 Trustee held funds which had been paid into the Chapter 13 Plan prior to conversion.

On February 8, 1988, the trustee filed a Complaint which named as defendants: the debtors, all creditors listed in the Chapter 13 Plan and the Chapter 7 Trustee appointed in the converted case. The complaint requested that the court determine the disposition of the funds held by the Chapter 13 Trustee and required the defendants to respond if they believed they had any interest in these funds.

The debtors filed an Answer (Doc. 15) in which they claimed the entire fund held by the Chapter 13 Trustee. A creditor, Household Finance Corporation, filed an Answer (Doc. 16) claiming an interest in the funds. The Chapter 7 Trustee filed an Answer stating he had no interest in the fund since it was received "[P]rior to the time of the conversion" (Doc. 21).

The Chapter 13 Trustee filed a Motion For Summary Judgment And An Affidavit In Support Of Motion For Summary Judgment (Doc. 22) in which he stated that he held the sum of one thousand seven hundred fifty-three dollars and fifty-eight cents ($1,753.58), which represented payments received from the debtors prior to the conversion of the case. These payments were received from the debtors' wages or were otherwise paid by the debtors to the trustee. The trustee further noted there were seven thousand three hundred and seventy-two dollars and eighty-four cents ($7,372.84) in allowed but unpaid claims in the Chapter 13 estate. The trustee asserted that there were no genuine issues as to any material facts and that as a matter of law the trustee was entitled to a ruling from the court authorizing him to distribute the one thousand seven hundred fifty-three dollars and fifty-eight cents ($1,753.58) to the creditors with

allowed claims in the Chapter 13 proceeding rather than paying these funds to either the debtors or the Chapter 7 Trustee.

The debtors filed a Motion For Summary Judgment (Doc. 28) in which they agreed there were no genuine issues as to any material facts, but concluded that as a matter of law the one thousand seven hundred fifty-three dollars and fifty-eight cents ($1,753.58) should be paid to them, rather than to the Chapter 7 Trustee, or rather than being retained by the Chapter 13 Trustee for payment to creditors with allowed claims in the debtors' Chapter 13 case.

There were a number of other filings which are not relevant to the determination of this issue; however, the court notes that the Trustee has filed Trustee's Proposed Distribution (Doc. 35) which provides for specific amounts to be paid to creditors with allowed claims and also an amount of administrative expense to be paid to the trustee from the one thousand seven hundred fifty-three dollars and fifty-eight cents ($1,753.58). The court further notes a Supplemental Citation filed by the trustee (Doc. 36).

The court, in determining this proceeding, considered all of the above filings and the oral arguments of the Chapter 13 Trustee and counsel for the debtors.

The trustee argues that the funds were voluntarily paid by the debtors pursuant to the terms of a confirmed Plan and, as a result, the rights of creditors under the terms of that confirmed Plan vest in those funds at the time the trustee receives the funds. Accordingly, the trustee concludes, as long as the funds were received prior to the date of the conversion, they must be distributed to creditors pursuant to the terms of the confirmed plan. In addition to other authority, the trustee cites *In re Redick*, 81 B.R. 881 (Bankr.E.D.Mich.S.D. 1987).

The debtors argue that the funds held by the trustee arise from post-petition wages of the debtors and, upon conversion, are not a part of either the converted Chapter 7 estate or the Chapter 13 estate which ceases at the time of conversion. Accordingly,

the debtors conclude, because the Chapter 13 estate has terminated, and because the Chapter 7 estate does not include post-petition earnings, the funds must be returned to the debtor. Among other citations of authority, the debtors cite *In re Luna*, 73 B.R. 999 (N.D.Ill.1987).

Although the court recognizes that the issue presented in this proceeding could accurately be articulated in a variety of expressions, this court believes the question is, "In a confirmed Chapter 13 case, to whom should funds voluntarily paid to the Chapter 13 Trustee from post-petition earnings of the debtor(s) be distributed: the Chapter 7 Trustee in the converted case, the Chapter 13 creditors pursuant to the terms of the confirmed plan, or the debtor(s)?" This issue has divided competent and concerned Bankruptcy Courts who have reached contrary conclusions in an attempt to reconcile competing policy concerns contained in the Bankruptcy Code. *Redick supra*; *Luna supra*; *In re Kao*, 52 B.R. 452 (Bankr.D.Or.1985).

It is important to recognize that the threads of Congressional intent were not woven into a seamless garment in the 1984 Amendments [P.L. 98–353] to the Bankruptcy Code.

The new Act has a number of conflicting provisions and is confusing to say the least[.]

.     .     .     .     .

and there is no House or Senate report of any kind and no conference report. *In re White Motor Credit*, 761 F.2d 270, 271 (6th Cir.1985).

As part of the 1984 Amendments to the Bankruptcy Code, Congress enacted 11 U.S.C. Section 1326 which provides in (a)(2),

A payment made under this subsection shall be retained by the trustee until confirmation or denial of confirmation of a plan. If a plan is confirmed, the trustee shall distribute any such payment in accordance with the plan. If a plan is not confirmed, the trustee shall return any such payment to the debtor, after deducting any unpaid claim allowed under § 503(b) of this title.

A fair reading of this Section indicates that if a plan is not confirmed, the trustee is obligated to return any accumulated funds to the debtor after deducting any authorized administrative expense; and, if a plan is confirmed, the trustee is required to distribute any accumulated fund to creditors in accordance with the plan. If this were the only section of the Bankruptcy Code relevant in this proceeding, the unambiguous language would require a conclusion that, because this is a confirmed plan, the funds were to be distributed in accordance with the confirmed plan. The resolution of this proceeding is, however, made more difficult by language in 11 U.S.C. § 348, § 541, and § 1306. (Appendix).

It is clear that the Chapter 13 estate consists of not only all property contemplated by Section 541; but, by necessity, the post-petition earnings of the debtors. An obvious difference between a Chapter 7 estate and a Chapter 13 estate is the inclusion of the debtors' post-petition earnings which often provide the sole source of funds for the plan. In this case, the one thousand seven hundred fifty-three dollars and fifty-eight cents ($1,753.58) fund arose from the debtors' post-petition earnings.

■ In recognizing the various competing theories for resolution of this issue,— *Luna,* which ordered the fund returned to the debtors, *Kao,* which ordered the fund to be paid to the Chapter 7 Trustee and *Redick,* which distributed the fund pursuant to the terms of the confirmed plan— this court is persuaded that the determination in *Redick* is the appropriate resolution.

A workable model for analyzing Chapter 13 proceedings is the recognition that a Chapter 13 Plan represents a legislatively sanctioned, and judicially approved new series of rights and responsibilities among the debtor and the debtor's creditors. In a Chapter 13 case, the debtors propose adjustments to the terms of their existing obligations. Pursuant to the present provision of the Bankruptcy Code, creditors may no longer vote to accept or reject a debtor's proposed Chapter 13 Plan. Rather, creditors must file objections to the confirmation of the debtor's proposed plan, and the

Bankruptcy Court then reviews the debtors' Plan and any objections. If the proposed plan complies with the provisions of Chapter 13 (and other applicable Code sections), the Bankruptcy Court confirms the proposed plan and thereby creates the new series of obligations and rights among the parties to provide for the satisfaction of creditors' claims. Section 1327(a) provides:

> The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.

While it would be inappropriate to ignore other provisions of the Bankruptcy Code, it would be equally inappropriate to fail to judicially implement an order that the court has previously entered, particularly one in which the debtors voluntarily proposed the provisions, advocated their adoption and requested the court to order as binding upon the debtors and their creditors.

This court believes that as a result of the 1984 Amendments, Congress determined that debtors should direct their own destinies by fashioning a plan that they believed was most consistent with their financial situation; and, as long as the plan satisfied certain requirements (§ 1325(a)), including possible objections by the trustee, or creditors holding an unsecured claim (§ 1325(b)), the court would confirm the proposed plan. Congress further granted the debtors the opportunity to avoid any particular payment to their Chapter 13 plan by allowing the debtors the right to dismiss or convert their case at any time (11 U.S.C. § 1307).

■ In reviewing the spectrum of opportunities available to a debtor in initially electing to proceed under Chapter 13, in drafting and presenting a Chapter 13 plan, in being able to modify a Chapter 13 Plan, and in being able to convert or dismiss a Chapter 13 Plan—all of which remain almost exclusively within the debtors' control —recognition must be given to the fact that when debtors have voluntarily paid funds to the Chapter 13 Trustee pursuant to the terms of a confirmed Plan, the creditors' right to receive funds pursuant to the

confirmed plan vests *at the time the trustee receives the funds* and debtors can no longer retain any reasonable expectation that such funds will be returned to them under any circumstances, including a conversion or dismissal. As the court in *Redick* declared,

> "... [O]nce a debtor has voluntarily parted with his wages and delivered them to the custody of the trustee in performance of a voluntary Chapter 13 Plan which has been confirmed by the court, the creditors have a vested right to receive those payments pursuant to the plan." 81 B.R. at 881.

This holding appropriately balances the debtors' otherwise unlimited opportunity to control the direction and disbursement of their promised payments in a confirmed plan with their creditors' reasonable expectation to receive those promised payments pursuant to the new rights and obligations created by the confirmed plan.

For the above reasons, and additional reasons persuasively presented by Judge Spector's analysis in *Redick*, the court determines the funds should be distributed to creditors pursuant to the terms of the confirmed plan.

Accordingly, the court GRANTS the Trustee's Motion For Summary Judgment (Doc. 22), DENIES the debtors' Motion For Summary Judgment (Doc. 28) and directs the trustee to distribute the accumulated fund in accordance with the Trustee's Proposed Distribution (Doc. 35).

An order consistent with this decision is simultaneously entered.

SO ORDERED.

## APPENDIX

### SECTION 348 (11 U.S.C. § 348)

§ 348. **Effect of conversion.**

(a) Conversion of a case from a case under one chapter of this title to a case under another chapter of this title constitutes an order for relief under the chapter to which the case is converted, but, except as provided in subsections (b) and (c) of this section, does not effect a change in the date of the filing of the petition, the commencement of the case, or the order for relief.

(b) Unless the court for cause orders otherwise, in sections 701(a), 727(a)(10), 727(b), 728(a), 728(b), 1102(a), 1110(a)(1), 1121(b), 1121(c), 1141(d)(4), 1146(a), 1146(b), 1301(a), 1305(a), 1201(a), 1221, and 1228(a) of this title, "the order for relief under this chapter" in a chapter to which a case has been converted under section 706, 1112, 1307, or 1208 of this title means the conversion of such case in such chapter.

(c) Sections 342 and 365(d) of this title apply in a case that has been converted under section 706, 1112, 1307, or 1208 of this title, as if the conversion order were the order for relief.

(d) A claim against the estate or the debtor that arises after the order for relief but before conversion in a case that is converted under section 1112, 1307, or 1208 of this title, other than a claim specified in section 503(b) of this title, shall be treated for all purposes as if such claim had arisen immediately before the date of the filing of the petition.

(e) Conversion of a case under section 706, 1112, 1307, or 1208 of this title terminates the service of any trustee or examiner that is serving in the case before such conversion.

### SECTION 541 (11 U.S.C. § 541)

§ 541. **Property of the estate.**

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

(2) All interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is—

(A) under the sole, equal, or joint management and control of the debtor; or

(B) liable for an allowable claim against the debtor, or for both an allowable claim against the debtor and an allowable claim against the debtor's spouse, to the extent that such interest is so liable.

(3) Any interest in property that the trustee recovers under section 329(b), 363(n), 543, 550, 553, or 723 of this title.

(4) Any interest in property preserved for the benefit of or ordered transferred to the estate under section 510(c) or 551 of this title.

(5) Any interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days after such date—

(A) by bequest, devise, or inheritance;

(B) as a result of a property settlement agreement with the debtor's spouse, or of an interlocutory or final divorce decree; or

(C) as a beneficiary of a life insurance policy or of a death benefit plan.

(6) Proceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case.

(7) Any interest in property that the estate acquires after the commencement of the case.

(b) Property of the estate does not include—

(1) any power that the debtor may exercise solely for the benefit of an entity other than the debtor; or

(2) any interest of the debtor as a lessee under a lease of nonresidential real property that has terminated at the expiration of the stated term of such lease before the commencement of the case under this title, and ceases to include any interest of the debtor as a lessee under a lease of nonresidential real property that has terminated at the expiration of the stated term of such lease during the case.

(c)(1) Except as provided in paragraph (2) of this subsection, an interest of the debtor in property becomes property of the estate under subsection (a)(1), (a)(2), or (a)(5) of this section notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law—

(A) that restricts or conditions transfer of such interest by the debtor; or

(B) that is conditioned on the insolvency or financial condition of the debtor, on the commencement of a case under this title, or on the appointment of or taking possession by a trustee in a case under this title or a custodian before such commencement, and that effects or gives an option to effect a forfeiture, modification, or termination of the debtor's interest in property.

(2) A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.

(d) Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, such as a mortgage secured by real property, or an interest in such a mortgage, sold by the debtor but as to which the debtor retains legal title to service or supervise the servicing of such mortgage or interest, becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

### SECTION 1306 (11 U.S.C. § 1306)

### § 1306. Property of the estate.

(a) Property of the estate includes, in addition to the property specified in section 541 of this title—

(1) all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title whichever occurs first; and

(2) earnings from services performed by the debtor after the commencement of

the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first.

(b) Except as provided in a confirmed plan or order confirming a plan, the debtor shall remain in possession of all property of the estate.