**In re Earl MUTCHLER, Jr., Bonnie R. Mutchler d/b/a Mutchler Farms, Debtors.**

Bankruptcy No. 87–20369.

United States Bankruptcy Court, D. Montana.

Jan. 12, 1989.

Harold V. Dye, Missoula, Mont., for debtors.

Bruce L. Hussey, Missoula, Mont., trustee.

Ralph B. Kirscher, Missoula, Mont., for PCA.

W. Arthur Graham, Missoula, Mont., for FLB.

ORDER

JOHN L. PETERSON, Bankruptcy Judge.

After conversion of their Chapter 12 case to Chapter 7 on September 8, 1988, the Debtors filed an Amended Statement of Exempt Property to which objections have been filed by the Trustee and Western Montana Production Credit Association (PCA). The Debtors list as exempt property the following:

1. Earnings. The Debtors claim earnings in the form of proceeds received from their potato crop and the 1988 crop are exempt under Section 25–13–614, M.C.A., up to 75% of the crop proceeds.

2. Property Necessary to Carry Out Government Function. One Debtor claims exempt a Winchester Model 70–3006 rifle and the other Debtor claims exempt a 357 Blackhawk revolver under Section 25–13–613(1)(b), M.C.A.

3. Motor Vehicles. Under Section 25–13–609(2), M.C.A., one Debtor claims exempt a 1974 Dodge pickup valued at $1,200.00 and the other Debtor claims a $1,200.00 exemption in a 1971 International Truck valued at $2,500.00.

4. Household Goods and Other Items. The Debtors claim exempt under Section 25–13–609, M.C.A., 44 separate items to which the Trustee and PCA object to the items of two metal detectors, two freezers, office equipment, desk, file cabinet, office chair and calculator, 1970 17' boat, 1974 boat trailer, T81 Yamaha snowmobile, 1977 Kawasaki motorcycle, miscellaneous yard and garden tools. Objection is also made to the exemption claim of Earl Mutchler under § 25–13–609(1) of a drill press, vice, arc welder, wire welder and hand grinder.

5. Tools of the Trade. Debtors claim exempt under Section 25–13–609(3)(a) and (c), over objection by the Trustee and PCA, a spudnick (potato loader), Massey Harris 65 Tractor, 1978 Ford offset disk, cultipacker, 1976 Melrose drill, Allis Chalmers Tractor with loader, Allis Chalmers Combine, and 1974 Case 1070 Tractor.

Hearing on the objections was held on December 1, 1988, and memorandums have now been filed by the parties in support of their respective positions.

Debtors filed this case under Chapter 12 on June 8, 1987, and after several attempt to put together a Plan, conceded that such could not be accomplished and therefore converted the case to Chapter 7. Following conversion, Debtors consented to relief from the automatic stay requests by Federal Land Bank and PCA on the real property and then amended their schedules to include the present claims of exemptions. The Debtors will thus lose the farm by foreclosure.

The Debtors contend that while the case was pending under Chapter 12, the Debtors planted a 1987 potato seed crop, in which the Court, by previous Order of March 17, 1988, determined PCA has a valid security interest to the extent of $3,500.00. Further, during the course of administration, Debtors were authorized to borrow funds from the Ronan State Bank to purchase the spudnick, which loan has now been repaid, so that such item is free and clear of liens. The source of repayment was the 1987 potato seed crop which was not subject to the PCA lien. Accordingly, Debtors claim three types of assets as exempt, namely, the balance of the funds in the 1987 potato seed crop in the amount of $4,848.00; the 1988 potato seed crop in the amount of $40,000.00 net; and the household goods, motor vehicles and tools of the trade. The 1988 crop was planted post-petition, but will not be marketed until the spring of 1989. The Debtor testified the crop was grown and harvested solely because of his labor and expertise.

Since this case was commenced under Chapter 12 on June 8, 1987, and converted to Chapter 7 on September 8, 1988, the application of Section 348(a) of the Codes to the claim of exemption is an issue. It is important to keep in mind that a Chapter 12 Plan was not confirmed. Section 348(a) provides:

"(a) Conversion of a case from a case under one chapter of this title to a case under another chapter of this title constitutes an order for relief under the chapter to which the case is converted, but, except as provided in subsection (b) and (c) of this section, does not affect a change in the date of the filing of the petition, the commencement of the case, or the order of relief."

Except for certain exceptions dealing with claims, executory contracts, and Order of Relief date, Section 348(a) specifies that the date of the filing of the original Chapter 12 petition is unaffected by conversion to Chapter 7. Moreover, as to payments made to the Trustee while the case is pending in Chapter 12, under § 1226, if the Plan is not confirmed, the payments are to be returned to the Debtor after deducting Trustee fees and expenses. We are not faced, in this case, with application of Plan payments, as was the situation in Chapter 13 cases such as *In re Kao*, 52 B.R. 452 (Bankr.Or.1985) (a confirmed Chapter 13 Plan), and *In re Swift*, 81 B.R. 621 (Bankr. W.D.Wash.1987) (an unconfirmed Chapter 13 Plan). *Swift* holds:

"Upon the conversion of a Chapter 13 case, in which a plan has not been confirmed, to a case under chapter 7, the date for determining property of the estate is the date of the filing of the Chapter 13 petition." *Id.* at 623.

*Swift*, however, lays great emphasis on Section 541(a)(6), which excepts from the estate earnings from personal services rendered after filing of the petition. *Swift* does not discuss § 1306(a), which specifically states that after acquired property including earnings is property of the estate. *Swift*, however, correctly construes § 1327, which states when a Plan is not confirmed, payments made to the Trustee are to be returned to the debtor, less Trustee's fees and costs. In sum, the conclusion in *Swift* as to property of the estate, other than Plan payments, is subject to challenge for the reasons set forth in *In re Kao*, supra. *Kao*, relying on *In re Winchester*, 46 B.R. 492 (9th Cir. BAP 1984), which dealt with exemptions and property of the estate issues, holds:

"Since § 541 is not mentioned in any of the subsections of § 348, it would, at

first appear that the term 'commencement of the case' as used in § 541 would be controlled by subsection (a) of § 348 and would therefore be the date upon which the petition for relief was filed rather than the date of conversion. However in chapter 13 after-acquired property is also property of the estate. 11 U.S.C. § 1306(a). As is stated by the BAP in *Winchester:*

> Therefore, it is only logical that property of the Chapter 7 estate in a converted Chapter 13 case should be determined on the date of conversion. Otherwise, the after-acquired property could not be included in the Chapter 7 estate. Once the property is revested in the debtor after confirmation, he can do anything with it so long as it is not subject to a lien provided for in the plan or order of confirmation. 11 U.S. C. §§ 1327(b) and (c). Thus, during the course of a plan, which can last as long as five years, a debtor may sell, abandon, consume, or trade-in most of his assets. Combining this with the possibility of after-acquired property means that by the time of conversion the estate may have been changed completely in character and amount. This reasoning is consistent with § 348(d) which allows the debtor to discharge claims arising during the pendency of the Chapter 13 but before conversion. It is only reasonable that the debtor be required to place after-acquired property into Chapter 7 estate if he is going to be relieved from liability of postpetition claims. Often it is the post-petition indebtedness which was used to acquire the after-acquired property.
> Also see *Armstrong v. Lindberg,* 735 F.2d 1087, 12 BCD 81 (8th Cir.1984)."

*Id.,* at 453–454.

*Kao* dealt with refund of Plan payments, not the date which governs exemptions. *Winchester* is directly in point on the exemption issue. Even though the above cases are Chapter 13 decisions, because of the similar language between Sections 1306 and 1207 (property of the estate), Chapter 13 case precedents provide a valuable tool for interpretation of Chapter 12 provisions.

*In re Janssen Charolais Ranch, Inc.* *(Janssen I),* 73 B.R. 125 (Bankr.Mont.1987). In the treatise ANDERSON–MORRIS, CHAPTER 12 FARM REORGANIZATIONS (1987), Conversions & Dismissals, § 3.09, the authors write at pp. 3–41 –3–45:

> "Conversion of a Chapter 12 case to a case under Chapter 7 could create problems relating to the exemptions available to the debtor in a subsequent Chapter 7 case, whether certain property obtained after commencement of the Chapter 12 case remains as property of the Chapter 7 estate, and what the appropriate distribution should be of funds in possession of the Chapter 12 trustee at the time of conversion of the case.

> *   *   *   *   *   *

The source of the problem is the definition of property of the estate for Chapter 12 and 13 purposes. In proceedings under each of these chapters, property of the estate includes the debtor's postpetition earnings. Chapters 7 and 11, however, do not include those earnings as property of the estate. Consequently, the problem facing the courts is to determine the proper treatment for postpetition earnings of Chapter 12 and 13 debtors upon conversion to cases under chapters in which those assets would not be property of the estate. Some courts have held that this postpetition property should receive the same treatment as postpetition claims against a debtor, and both the assets and liabilities would be transferred to the new case after conversion. * * * Other courts, however, have focused more directly on § 348 of the Code and have held that these postpetition earnings would not be property in the subsequent Chapter 7 case. Those courts have held that conversion of a case operates so as to render the initial filing date of the Chapter 13 case the filing date for the converted Chapter 7 proceeding. * * * The result is that funds representing those earnings in the possession of a trustee would be returned to the debtor upon conversion of the case. The courts certainly have not reached a consensus on this matter.

Moreover, there does not appear to be any way to reconcile the opposing decisions reached thus far.

\* \* \* \* \* \*

A second issue that arises in the conversion of a case is the proper treatment to be given to a debtor's claim of exemptions. The problem can arise in two ways. First, there could be changes in the applicable exemption law between the time of the initial commencement of the Chapter 12 case and the date of conversion to Chapter 7. In that instance, the question arises of which exemption law applies to the debtor's claim in the Chapter 7 case. Although the statutory argument employed by those courts that have found that postpetition earnings are not property of Chapter 7 estates created after the conversion of a prior Chapter 13 case is again available, the courts largely have adopted the date of the conversion of the case as the proper date to determine exemptions. [Citing *In re Lindberg*, and *Winchester*, supra.] A reason for choosing the conversion date also relates to the property being claimed as exempt. That is, over the course of a Chapter 12 proceeding, the debtor may acquire additional property and use other property which might have been claimed as exempt in initial filings. For example, a debtor may claim a tractor as exempt in the initial filing of schedules in the Chapter 12 case. The property need not be set aside as exempt because the debtor will retain possession of that property upon confirmation of the case. Over the course of the Chapter 12 proceedings, however, the value of the tractor may be reduced significantly by normal wear and tear. When the debtor subsequently attempts to convert the Chapter 12 case to a Chapter 7 case, the debtor may seek to claim different property as exempt in order to take better advantage of applicable exemption provisions."

In the present case, the Montana state law regarding exemptions has been changed between the date the petition was filed and the date of conversion of the case, Sec. 1, Chap. 20, Laws of Montana, 1987 (effective October 1, 1987), and the Debtors acquired from proceeds of the estate a new implement to conduct their potato seed operation. Thus, the proper date to select to determine property of the estate and exemptions is critical.

I am persuaded that the reasoning of *In re Winchester* is proper, not only for policy reasons, but also because of Chapter 12 Code provisions. Section 1207 defines property of the estate as:

"(a) Property of the estate includes, in addition to the property specified in Section 541 of this title—

(1) All property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed or converted to a case under Chapter 7 of this title, whichever occurs first; and

(2) earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted to a case under Chapter 7 of this title, whichever occurs first."

Section 541(a)(6) and (7) provides that property of the estate includes:

"(6) Proceeds, products, offspring, rents and or profits of or from property of the estate, except such earnings from services performed by an individual after the commencement of the case.

(7) Any interest in property that the estate acquires after the commencement of the case."

Needless to say, the earnings exception in § 541(a)(6) seems to be in conflict with the specific language of § 1207(a)(2). While § 541 is a part of a general chapter applicable under § 103(a) to a case under Chapter 12, under § 103(i), Chapter 12 of Title 11 applies only in a case under such chapter, so that the specific treatment of earnings under § 1207(a)(2) governs, rather than the exception in 541(a)(6). That exception applies only to Chapter 7 and 11 cases.

As a result, as of the date of conversion of this case to Chapter 7 from Chapter 12, property of the estate which

passes by law to the Trustee includes the 1987 crop proceeds, 1988 crop and all equipment, household goods, tools of trade in existence at the date of the original filing and acquired post-petition during the administration of the Chapter 12 case. Likewise, the Debtors' exemptions in such property are to be governed as of the date of conversion to Chapter 7, because that is the date when the Chapter 7 case commenced. As noted in *In re Lindberg*, supra, at 1090–1091:

> "The bankruptcy courts are in general agreement that in a case converted from Chapter 13 to Chapter 7, the property of the estate consists of all property in which the debtor has an interest on the date of conversion. *See, In re Tracy*, 28 B.R. 189 (Bankr.D.Me.1983); *In re Stinson*, 27 B.R. 18 (Bankr.D.Or.1982); *In re Richardson*, 20 B.R. 490 (Bankr.W.D.N.Y.1982). We believe that the same date must control in determining what exemptions the debtor may claim from the estate. Only if the same date controls what is property of the estate and what exemptions may be claimed can the debtor make full use of exemption laws.

> \*　　\*　　\*　　\*　　\*　　\*

> We find further support for our conclusion that the date of conversion controls what exemptions may be claimed in one of the new bankruptcy rules, Rule 1019(1). The Advisory Note to Rule 1019(1) explains that when the debtor in a converted case has not previously prepared a schedule of assets, he must do so as if a Chapter 7 petition had been filed *on the date of conversion.* (Emphasis in original). Since debtors must claim exemptions in the schedule of assets (Bankruptcy Rule 4003(a)), Rule 1019(1) strongly suggest that the date of conversion controls what exemptions may be claimed in a converted case."

By General Order 86–2 of this Court (November 26, 1986), the Rules of Bankruptcy Procedure apply to all cases filed pursuant to Chapter 12 of Title 11, except where compliance would be contrary to the Bankruptcy Laws. Therefore, Rule 1019 is applicable to Chapter 12 as it is to Chapter 13 cases.

Having thus concluded that the date of conversion applies to test the validity of the exemptions of the Debtors against assets of the estate, we must look to Montana state law to determine what exemptions of property of the estate are afforded to Debtors since Montana has opted out of the federal exemptions. Sec. 31–2–106, M.C.A., (1987).

■ Earnings. The Debtors claim as exempt the balance of proceeds of the 1987 potato seed crop in the sum of $4,848.00, which sum was on hand on the date of conversion. The issue is whether the proceeds from the sale of the crop constitutes earnings of the Debtor. The Debtor has filed an affidavit with the Court claiming such proceeds which satisfies the requirements of § 25–13–411, M.C.A. Under 25–13–614, M.C.A., earnings are exempt as follows:

> "(2) Except as provided in Subsection (3) and (4), the maximum part of the aggregate disposable earnings of a judgment debtor for any workweek that is subjected to garnishment may not exceed the lesser of:
>
> (a) The amount by which the disposable earnings for the week exceed 30 times the federal minimum hourly wage in effect at the time the earnings are payable; or
>
> (b) 25% of his disposable earnings for that week.
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> (5) For the purpose of this section, the definition of earnings, disposable earnings and garnishment are set forth in 15 U.S.C. 1672."

Under 15 U.S.C. 1672(a), the term earnings means compensation paid or payable for personal services, whether denominated wages, salary, commission, bonus or otherwise, and includes periodic payments pursuant to a pension or retirement program. The Debtor testified that the net proceeds from the crop were derived solely from his labor and expertise as a farmer, and he needs such funds for living expenses. Thus, he claims 75% of the $4,848.00. I

hold the proceeds from the 1987 crop, now reduced to cash, are exempt up to 75% since they constitute earnings for personal labor by the Debtor. I note that the definition of earnings under 15 U.S.C. 1672 is broad, and since we are dealing with an exemption statute, the exemption should be liberally construed in favor of the Debtors. *MacDonald, Trustee v. Mercill,* 714 P.2d 132 (Mont.1986). Further, I am aided in this conclusion by the definition of earnings in § 40–5–201(6), M.C.A., which defines earnings as:

"Compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise, and specifically includes periodic payments under pension or retirement programs or insurance policies of any type. 'Earnings' specifically includes all gain derived from capital, labor or both combined, including profit gained through sale or conversion of capital assets."

Clearly, the definition of earnings is much broader than the Code definition of wages as defined in § 39–3–201(5), M.C.A., which states wages includes any money due an employee from an employer. Money derived from personal labor by a farmer or self-employed person are the fruit of his labor and are earnings within the Montana exemption statute. The proof of the Debtor regarding his personal labor to grow and harvest the crop so it could be reduced to cash is undisputed, and consequently the Debtor is entitled to an exemption of $3,636.00 in the cash proceeds, with the balance payable to the Trustee. I am assuming for the purposes of this computation that the PCA lien of $3,500.00 has been paid to the Trustee for the benefit of PCA. If not, such sum is to be paid to PCA and then the balance remitted to the Debtors and Trustee.

As to the 1988 crop presently harvested but not yet sold, the labor of the Debtor has been expended on such crop but the crop has not been reduced to cash. The crop, if sold in the spring of 1989, is expected to net $40,000.00, and is now in storage. Under the above definition of earnings, compensation paid or payable for personal services constitutes an exempt item. The Debtor testified that about 75% of the required labor to sell the crop has been performed by him, and marketing the crop is all that is left to be accomplished. However, on the date of conversion of the case to Chapter 7, the crop had not been liquidated, but rather remains in existence as crop in storage. Under these facts, the crop is exempt not as earnings but rather as personal property under § 25–13–609(1), M.C.A., which provides:

"(1) A judgment debtor is entitled to exemption of the following:

(1) the judgment debtor's interest, not to exceed $4,500.00 in aggregate value, to the extent of a value not exceeding $600 in any item of property, in household furnishings and goods, appliances, jewelry, wearing apparel, books, firearms and other sporting goods, animals, feed, crops and musical instruments;"

Personal property claimed exempt under 25–13–609(1). Debtor Bonnie Mutchler claims as exempt 44 separate items of personal property. Included in the list of exemptions to which objection is raised is a 1970 17' Silverline boat valued at $600.00, 1974 Ezlo boat trailer valued at $150.00, T81 Yamaha snowmobile valued at $800.00, 1977 Kawasaki motorcycle valued at $75.00, desk, file cabinet, office chair and calculator valued at $65.00, potatoes valued at $520.00, two metal detectors valued at $50.00, and two freezers valued at $75.00. All of the items claimed total $4,500.00, so that aggregate amount under 25–13–609(1) is satisfied.

Neither the Trustee nor PCA have presented a plausible interpretation of Subsection (1) of 25–13–609. As that section is written the Debtors may claim as exempt any item of property up to the extent of $600.00, together with $600.00 in household furnishing and goods, $600.00 in appliances, $600.00 in jewelry, $600.00 in wearing apparel, $600.00 in books, $600.00 in firearms and other sporting goods, $600.00 in animals, $600.00 in feed, $600.00 in crops and $600.00 in musical instruments, so long as the total exemption does not exceed the

cap of $4,500.00. I am guided in this interpretation by the case of *Matter of Smith*, 640 F.2d 888 (7th Cir.1981). *Smith* involved interpretation of the federal exemption statute § 522 of the new Bankruptcy Code. § 522(d) grants exemptions in a laundry list of items of real and personal property, up to certain aggregate amounts, i.e., the debtor's interest not to "exceed $200.00 in value in any particular item or $4,000.00 in aggregate value, in household furnishings, household goods, wearing apparel, appliances, books, animals, crops or musical instruments * * * ". § 522(d)(5), before amendment in 1984, read:

> "(5) The debtor's aggregate interest, not to exceed in value $400 plus any unused amount of exemption provided under paragraph (1) of this subsection, *in any property.*" Emphasis supplied.

The term "in any property" in § 522(d)(5) in virtually identical to the term "in any item of property" in § 25–13–609(1), M.C.A. The Circuit Court in *Smith* held:

> "The dispute here is caused by the words 'any property' in paragraph (5). The trustee contends that they refer only to other property that is specified in section 522: household goods, motor vehicles, etc. The debtors argue that they have the same broad meaning as in section 541: 'all legal or equitable interests of the debtor.' We agree with the debtors that Congress did not intend to distinguish between section 522 property and section 541 property. We hold that the general exemption may be applied to any property that is property of the estate—including, of course, causes of action arising under the federal Truth in Lending Act or similar state statutes."

The Court reasoned such interpretation was consistent not only with the "fresh start" provisions of the Bankruptcy Code but with the age-old doctrine that "exemption statutes are to be construed liberally". *Id.* at 891.

■ Thus, I conclude that under 25–13–609(1) any item of property may be exempt up to $600.00, provided the entire exemption for all items of property including those specifically enumerated does not exceed $4,500.00 in the aggregate. I believe this interpretation comports with legislative intent and clearly eliminates much controversy over what particular items may be claimed as exempt. Since each item of property claimed exempt by Bonnie Mutchler, except the 1970 Silverline boat and Yamaha motorcycle is less than $600.00, those items are properly exempt under § 25–13–609(1). As to the boat and motorcycle, those items will be turned over to the Trustee for sale, whereupon Bonnie Mutchler will be given a credit for $600.00 in each item as her exemption.

Likewise, as to Debtor Earl Mutchler, he seeks exemptions of items of property under § 25–13–609(1), which includes the item "Potatoes (after earnings exemption)" of $3,460.00. By the same reasoning stated above, since the exemption of each item is less than $600 per item, except for the potato crop, such exemptions are allowed over objections by the Trustee. As to the 1988 potato crop exemption, such claim cannot exceed $600.00, so that upon sale of the crop by the Trustee, Earl Mutchler will be given credit for $600.00 from the proceeds of sale.

■ Section 25–13–609(a) to (c) exemption. Such statute allows as exempt property "the judgment debtor's interest, not to exceed $3,000.00 in value, in (a) any implements; (b) professional books; or (c) tools, of the trade of the judgment debtor or a dependent of the judgment debtor". In *In re Cabrera*, 5 Mont.B.R. 353, 96 B.R. 304 (Bankr.Mont.1988), I held that the word "or" contained in subsection (3) is meant to be used in the disjunctive, and as such the judgment debtor may exempt up to $3,000.00 in value of each item listed in 25–13–609(3)(a), (b) or (c), thereby allowing a stacking of the exemptions. PCA requested the Court to reconsider such decision, and toward that end introduced testimony and opinion evidence from state Senator Mike Halligan, Chairman of the Subcommittee on Lien Laws, which committee was instrumental in redrafting the Montana exemption statutes in the 1987 legislative session. According to Senator Halli-

gan, and minutes of the subcommittee, a $3,000.00 limitation was intended to apply to all tools of trade, professional books and implements in the aggregate. The minutes state the "recommendation for a $3,000.00 exemption was an effort to allow all persons a reasonable amount of tools, books, furniture, or equipment required in today's business or professional world in order to continue in their occupations". The Court has now reviewed its prior opinion and concludes it correctly interpreted Section 25–13–609(3)(a) to (c). As I noted in *Cabrera:*

"If the Montana legislature had intended the $3,000.00 amount of § 25–13–609(3) to be 'in aggregate' it certainly could have so stated. In subsection (1) of the same exemption section, 25–13–609, the legislature distinctly used the words 'in aggregate' to cap the amount a debtor may claim under that subsection. This court finds that the legislature's omission of the words 'in aggregate' in subsection (3) was intentional."

In addition to the discussion in *Cabrera*, the following authorities support the Court's conclusions. The placing of the comma after tools in Subsection (c) in the enrolled bill is unimportant in statutory construction. Punctuation is minor and not decisive or controlling as an element in the interpretation of a statute. 73 *Am.Jur.2d* § 216, P. 410. As to the use of the word "or" in the subsection, the language from *Wilcox v. Warren Construction Co.*, 95 Or. 125, 186 P. 13, 18–19, is instructive:

"It is common learning as a matter of grammar that when in an enumeration of persons or things the conjunction is placed immediately before the last of the series the same connective is understood between the previous members. If the disjunctive conjunction 'or' is used, the various members of the sentence are taken separately, while if 'and' is used they are to be considered jointly. For instance, deeds are to be acknowledged 'before any judge of the Supreme Court, County Judge, Justice of the Peace, or Notary Public'. L.O.L. § 7109. It is manifest that the officers named are to be taken separately, and that the ac-knowledgment is not to be taken before all of them. The service of one is sufficient. Other illustrations will readily occur to the mind.

'Or' is defined as a 'disjunctive often with either or whether as a correlative, used to introduce a word or phrase expressing an object or action, the acceptance of which excludes all the other objects or actions mentioned'. Standard Dictionary, 1733."

Lest one believes the 1733 Standard Dictionary is out of date, Black's Law Dictionary, 4th Ed. (1951), P. 1246, cited in *Cabrera*, gives the same definition by stating "or"

"is a disjunctive particle used to express an alternative or to give a choice of one among two or more things."

Finally, *73 Am.Jur.2d*, § 214, pp. 419–420 states:

"In its elementary sense the word 'or' as used in a statute, is a disjunctive particle indicating that the various members of the sentence are to be taken separately. If 'and' is used, such portions of the sentence are to be considered jointly. When, in the enumeration of persons or things in a statute, the conjunction is placed immediately before the last of the series, the same connective is understood between the previous members."

Under PCA's interpretation of the statute, a debtor would have to elect between his implements, his professional books, or his tools, so that in the case of a farmer, he would have to elect between his seed catalogue, his plow or his hoe, but he could not select all three. The present case shows the absurdity of such position. If Mutchler had to elect between subsection (a) and (c), he would not be able to carry on his trade as a potato farmer, for he would, of necessity, be stripped of at least one vital and necessary piece of equipment or tool which is required to plant (tractor and disk), seed (drill), grow, harvest (picker and loader), and then sell the crop. PCA would have the Debtor select the disk and tractor to furrow the ground for seed, but then would take from him as non-exempt property the implements necessary to harvest and pack the crop. I find such construction

would be a disservice to a liberal interpretation of exemption statutes. Regardless of the intent of the subcommittee, the final legislative action allowed exemption of $3,000.00 in implements, $3,000.00 in professional books or $3,000.00 in tools, all of which must be associated with the trade of the debtor. Section 1–2–101, M.C.A. states in defining the role of the judge:

"In the construction of a statute, the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted. Where there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all."

True, the intention of the legislature is to be pursued if possible, § 1–2–102, M.C.A., but that intention, when expressed in clear legislative language, will be determined from the words of the statute, not subcommittee minutes. Accordingly, the Debtors are entitled to select for their trade as farmers $3,000.00 in each category of tools, books or implements.[1]

In this case, the Debtor Earl Mutchler selected as exempt a spudnick and tractor valued at $2,900.00 under 609(3)(c), and a disk and cultipacker valued at $3,000.00 under 609(3)(a). Bonnie Mutchler selected as exempt items under 609(3)(c) a drill, tractor with loader and combine valued at $3,000.00 and under 609(3)(a) a tractor valued at $3,000.00. Each exemption is within the statutory cap. Further, under the holdings of *MacDonald v. Mercill*, 714 P.2d 132 (Mont.1986) and *In re Taylor*, 861 F.2d 550 (1988) aff'g *In re Taylor*, 73 B.R. 149 (9th Cir. BAP 1987), each item is a tool or implement of the trade of a farmer. Thus, the objections of the Trustee and PCA to each exemption is without merit. The case of *In re Patterson*, 825 F.2d 1140 (2nd Cir.1987), cited by the Trustee, is simply

contrary to the holdings of the Montana Supreme Court and the Ninth Circuit Court of Appeals, dealing with the definition of tools of the trade, and involved an interpretation of § 522(f) of the Code, not a state law exemption statute.

As to the claim of each Debtor to exemption of motor vehicles, no objections have been raised that such items are not properly claimed under § 25–13–609(2). The ownership interest of Earl Mutchler in the 1971 International Truck can be claimed as exempt up to the value of $1,200.00.

■ Finally, the Debtors also include in their claim of exemption a Winchester rifle and a Blackhawk revolver (no value stated) under Section 25–13–613(1)(b), M.C.A., entitled "Property necessary to carry out Governmental Functions". Such section, in pertinent part to this case, reads:

"(1) In addition to the property mentioned in 25–13–611 [25–13–609(1)],[2] there shall be exempt to all judgment debtors the following property:

\* \* \* \* \* \*

(b) all arms, uniforms, and accouterments required by law to be kept by any person and one gun to be selected by the debtor;"

Obviously, the purpose, intent and plain language of such subsection is to allow law enforcement personnel to exempt from execution necessary arms and guns required by such person to keep the peace. For example, peace officers in Montana are exempt from the concealed gun law, § 45–8–317(1), M.C.A., and must take firearm training as part of the basic course certified by the Board of Crime Control. Sections 7–32–303 and 44–4–301, et. seq., M.C.A. Section 25–13–613(1)(b) does not allow a farmer an additional exemption for guns or firearms, and thus the exemption

---

1. If the legislature of Montana feels the result of *Cabrera* and the present case results in a "windfall" to the Debtor, it can easily correct such situation by reducing the $3,000.00 limitation to a lesser dollar amount.

2. The complier of the Montana Code Annotated states:

"Erroneous Reference. This reference in subsection (1) to 25–13–611 is erroneous. Section 25–13–611 was repealed by Ch. 302, L.1987. Section 25–13–609(1), enacted by Ch. 302, appears to most closely correspond to the property formerly mentioned in 25–13–611."

claimed by each Debtor under such section is denied.

IT IS ORDERED the objections of the Trustee and PCA to the claim of exemptions of the Debtors in the 1988 potato crop, boat and motorcycle for all amounts over $600.00 and the guns under Section 25–13–613(1)(b) are sustained, and all other objections to exemptions are denied.