**In re C. Archie SAMFORD and Juanita L. Samford, Debtors.**

**Bankruptcy No. 87–20053–DPM.**

United States Bankruptcy Court,
E.D. Missouri, N.D.

April 17, 1989.

Fredrich J. Cruse, Hannibal, Mo., Dale E. Reesman, Boonville, Mo., for debtors.

Charles R. Willis, St. Louis, Mo.

Clifford H. Ahrens, Hannibal, Mo.

Kevin L. King, Clayton, Mo., trustee.

James S. Cole, St. Louis, Mo., Asst. U.S. Trustee.

## MEMORANDUM OPINION

DAVID P. McDONALD, Bankruptcy Judge.

### JURISDICTION

This Court has jurisdiction over the parties and subject matter of this proceeding pursuant to 28 U.S.C. §§ 1334, 151, and 157 and Local Rule 29 of the United States

District Court for the Eastern District of Missouri. This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(A) and (O), which the Court may hear and determine.

BACKGROUND

The Debtors filed a voluntary petition pursuant to Chapter 12 of the United States Bankruptcy Code on March 2, 1987. On December 29, 1987 and January 20, 1988, the Bankruptcy Court granted Farm Credit Bank of St. Louis ("FCB") relief from the automatic stay and authorized it to foreclose its Deed of Trust as a result of Debtors' default in payments under the confirmed Plan of Reorganization. Unbeknownst to this Court, the Debtors retained attorney Dale R. Reesman to represent them in State Court proceedings with FCB and paid him $2,000.00 around the first part of June, 1988. The Debtors' Chapter 12 Plan had been confirmed prior to that time and they were still proceeding under that Chapter 12 Plan at the time they paid Reesman. Neither the Debtors nor attorney Reesman ever applied to this Court for authority to retain or employ a professional person. The Debtors' Chapter 12 proceedings were voluntarily dismissed on June 22, 1988. Upon motion by Farm Credit Bank this Court entered an Order requiring Reesman to recount to the Court for fees and expenses and to show cause why he should not be required to turn over the fees and expenses he had received from the Debtors to the Trustee. Reesman complied with the Court's Order. A hearing was held on July 19, 1988 at which time Reesman testified on his own behalf and made an oral motion to the Court to approve his attorney's fees nunc pro tunc.

DISCUSSION

■ Reesman challenges this Court's Order to show cause on the basis that this Court no longer has jurisdiction over the property of the Debtors' estate because the case was dismissed on June 22, 1988. He interprets 11 U.S.C. § 349(b)(3) to indicate that all property of the estate revests in the Debtors by operation of law because the case has now been dismissed and the property reverted back to the Debtors and thus the Court has no power to retain

jurisdiction over matters concerning the estate even if those matters occurred before the bankruptcy was dismissed. However, 11 U.S.C. § 349(b) reads:

> "(b) Unless the court, for cause, orders otherwise, a dismissal of a case other than under Section 742 of this title
>
> . . .
>
> (3) revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title."

Section 349(b) of the Bankruptcy Code specifically contemplates that return of all estate property to the debtor is not required in every dismissal. *See In re Miranne,* 87 B.R. 897 (Bankr.E.D.La.1988).

> "Section 349 acknowledges that some cases, such as the case at bar, have progressed so far that judicial interference is needed to unravel or preserve the rights of the parties. Read together, Section 349 and Sections 1112 and 1208 and 1307 allow the bankruptcy court to retain jurisdiction over a matter after the dismissal of the case."

*In re Lerch,* 85 B.R. 491 (Bankr.N.D.Ill. 1988). Thus, the statute itself as well as case law indicates that indeed this Court may retain jurisdiction over the property of the estate in order to preserve the rights of the parties even after the voluntary dismissal of the case. *See also In re Pocklington,* 21 B.R. 199 (1982); *In re Stardust Inn, Inc.,* 70 B.R. 888 (Bankr.E.D.Pa.1987).

The Order this Court issued on July 11, 1988 granting the dismissal of the Debtors stated that "the Court shall retain limited jurisdiction for the purposes of resolving the following administrative issues: (1) a final accounting by the Debtors, (2) determine the amount of administrative expenses of the Trustee and attorneys and (3) determine appropriate distribution of funds retained by the Trustee." These enumerated factors are sufficient to allow this Court to determine the appropriateness of the monies turned over by the Debtors to unauthorized professional persons, while the case was still in a Chapter 12 bankruptcy proceeding and after a Plan had been con-

firmed. This Court believes that where estate property has been turned over to an unauthorized professional party in direct violation of the Bankruptcy Code which requires that any attorney representing a debtor must first receive approval of the bankruptcy court pursuant to 11 U.S.C. § 327, it has cause to retain jurisdiction in order to preserve the rights of the parties.

The burden is upon Reesman to prove that the funds he received from the Debtors were not part of the bankruptcy estate. The Debtors testified that the money they paid to this attorney came out of their living expenses. Living expenses of a debtor which are being retained under a confirmed plan cannot include fees to pay an attorney without authorization of this Court. The term "living expenses" contemplates that which is necessary for the debtor to maintain a reasonable standard of living while complying with the provisions of his confirmed plan. Obviously, if the Debtors had enough money out of their living expenses to pay an unauthorized attorney's fees of $2,000.00, then their living expenses were excessive. This is money that should have been given to creditors through the structure of the plan.

If the Debtors knowingly submitted a Plan which deliberately provided for excessive living expenses for themselves and thus lowered the amount of funds available for distribution to the creditors, then such conduct may be a fraud on the creditors.

■ Reesman argues that in the case of a dismissal, Section 349 dictates that the property of the estate is revested in the entity in which such property was vested immediately before the commencement of the case under this title and disputes this Court's ability to require him to turn monies back over to the estate. In the alternative, if he is ordered to return the $2,000.00 to the Trustee, he then requests it be returned to the Debtor.

There is no direct case law on the effect of a dismissal of a Chapter 12 case upon monies mis-distributed or not distributed during the time that the plan was in effect.

However, since the language of Chapter 12 and 13 are nearly identical, some assistance may be gained by a review of Chapter 13 cases. The Ninth Circuit has held in a Chapter 13 case that once a confirmed plan is dismissed, the trustee has no authority to continue making distributions in accordance with the plan and the money must be returned to the debtor. *In re Nash,* 765 F.2d 1410 (9th Cir.1985). The facts in *Nash* were such that the trustee had collected a sum of money during the time of the Chapter 13 plan but failed to distribute it before the case was dismissed. *In re Nash* has been interpreted to actually stand for the proposition that a creditor's right to payment vests not at the time of confirmation of the plan, but at the time of distribution by a trustee authorized to act under the Code. *Nash* does not dispute that Section 1325(b) requires the Chapter 13 trustee to pay funds received by him to the creditors while there is still a Chapter 13 case pending. *See In re Redick,* 81 B.R. 881 (Bankr.E.D.Mich.1987). *Nash* concludes that wage deductions received by the trustee before dismissal of the Chapter 13 case reverted to debtors upon dismissal and should not have been distributed by trustee to debtors' credit union after dismissal. Several courts have disagreed with this conclusion and/or result. *See In re Redick, supra;* and *In re Lennon,* 65 B.R. 130 (Bankr.N.D.Ga.1986).

■ If followed in Chapter 12 cases, the *Nash* decision would lead to patently unfair results. In most Chapter 12 plans, payments are made on an annual basis. Creditors are held off throughout the growing season. It would be unfair to allow the debtor to voluntarily remit the proceeds from the crops to the trustee and then deny the creditors the distribution of those funds pursuant to a confirmed Plan by simply dismissing their case. I must conclude that those funds held by a trustee, pursuant to a confirmed Chapter 12 plan, cannot be returned to the debtors, but must be distributed in accordance with the Plan.[1]

1. In his dissent, Judge Jamison in *In re Nash* stated that even after the plan is dismissed, the trustee continues to have a duty to distribute the funds received before dismissal. *Nash* at 1416.

 Reesman made an oral motion at the hearing that this Court approve his attorney's fees nunc pro tunc. However, Reesman did not indicate to the Court that he was unaware that the Debtors were in a bankruptcy case and following the provisions of a confirmed Chapter 12 Plan. Rather, all of his testimony indicates that he indeed was aware that the Debtors were in bankruptcy proceedings. The case of *Matter of Richland Building System, Inc.*, 40 B.R. 156 (Bankr.W.D.Wis.1984), is a case in which the corporate debtor had separate bankruptcy counsel from counsel they retained to take care of state court matters. The court there stated that:

> "Once Stafford knew of the bankruptcy filing it was also aware that court approval of its further representation was necessary."

 The Eighth Circuit has addressed nunc pro tunc orders in *J.L. Lavender v. Wood Law Firm*, 785 F.2d 247 (8th Cir. 1986). The Court there stated that an attorney hired to represent a debtor in possession must give notice to creditors and receive court approval prior to being compensated by the estate. 11 U.S.C. § 330, Bankruptcy Rule 2016. Without such prior approval, ordinarily subsequent application for fees should be denied and the funds received should be ordered returned to the estate. *Lavender v. Wood Law Firm* at 248. The Court does have discretion in limited circumstances and as a matter of fairness to exercise its discretion and enter a nunc pro tunc order authorizing compensation. However, here, as in the *Lavender* case, Reesman clearly failed to comply with the notice and application requirements of the Bankruptcy Code and Rules. Therefore, this Court refuses to exercise its discretion to retroactively authorize Movant's representation of the Debtors and his fee.

I find that Reesman received his fees out of funds belonging to the bankruptcy estate, he failed to obtain the required approval of this Court to represent the Debtors in the State Court proceedings, at a time when the Debtors were in bankruptcy and operating under a confirmed Chapter 12 plan, and he received unauthorized fees from the estate. Therefore, Dale R. Reesman is directed to return the $2,000.00 he received from the Debtors over to the Trustee, for distribution pursuant to the confirmed Plan.

This Court has not determined whether the hourly fees charged by Reesman were reasonable, nor made any findings as to the quality of the services performed. Under the facts and circumstances of this case, I find that he is not entitled to any fees primarily due to his and the Debtors' failure to seek prior court approval for representation of the Debtors.

A separate Order consistent with this Memorandum Opinion shall be entered this date.