**In re Juan O. PLATA, In re Catalina Plata, Debtors.**

**Peter H. ARKISON, Trustee, Appellant,**

v.

**Juan O. PLATA, Catalina Plata, Appellees.**

**No. 90–35498.**

United States Court of Appeals, Ninth Circuit.

Submitted Jan. 11, 1991.*

Decided March 10, 1992.

---

* The panel finds this case appropriate for submission without oral argument pursuant to Ninth

Circuit Rule 34–4 and Fed.R.App.P. 34(a).

Peter H. Arkison, Bellingham, Wash., for appellant.

Laughlan H. Clark, Brennan & Clark, Bellingham, Wash., for appellees.

Before WRIGHT, BRUNETTI and LEAVY, Circuit Judges.

LEAVY, Circuit Judge:

This case presents the court with a question of first impression involving an interpretation of Chapter 12 of the Bankruptcy Code, *viz.*, do funds acquired by the petitioners following confirmation of their reorganization plan and held by the Chapter 12 bankruptcy trustee for eventual distribution to creditors belong to the petitioners or to their creditors at the time the Chapter 12 case is converted to a Chapter 7 liquidation? We agree with the Bankruptcy Appellate Panel ("BAP") in its affirmance of the bankruptcy court and hold that such funds revest in the petitioners at the time of conversion.

## FACTS AND PRIOR PROCEEDINGS

Juan and Catalina Plata ("Debtors") are family farmers who filed a petition in 1987 under Chapter 12 of the Bankruptcy Code.[1] Debtors submitted a plan, confirmed by the bankruptcy court early the following year,

---

1. Enacted in 1986 in response to the debt crisis faced by family farmers, Chapter 12 of the Bankruptcy Code is available to a "family farmer with regular annual income", 11 U.S.C. § 109(f), and is modeled after Chapter 13 of the Bankruptcy Code. 5 William Miller Collier, *Collier on Bankruptcy,* ¶ 1200.01[2] (Lawrence P. King, ed., 15th ed. 1991) (*"Collier"*).

which provided that some $29,000 would be paid to the bankruptcy trustee for distribution to their creditors in 1988. Most of this money was to come from the proceeds of the sale of strawberries and raspberries grown on Debtors' farm. Unfortunately for all concerned, by harvest time it became apparent that Debtors' berry crop would not generate sufficient income to meet the payments required by the plan. Consequently, Debtors converted their case from Chapter 12 to Chapter 7.

At the time of conversion, approximately $14,000 of the money previously paid by Debtors to the Chapter 12 trustee remained undistributed. Following conversion, Debtors claimed $8,300 of those funds as exempt from their creditors under 11 U.S.C. § 522(d).[2] The Chapter 7 trustee opposed the exemption claim and moved for summary judgment, arguing that the creditors had effectively obtained a vested interest in the funds the moment Debtors paid the money over to the Chapter 12 trustee, and that vested interest could not be defeated by a conversion of the Chapter 12 case.

The bankruptcy court rejected the trustee's argument and allowed Debtors' exemption claim. The trustee then appealed to the BAP, which affirmed the bankruptcy court in an unpublished memorandum decision. The trustee has timely appealed to this court, advancing the same argument he asserted below. We have jurisdiction under 28 U.S.C. § 158(d) and examine *de novo* the BAP's review of the bankruptcy court's decision. *See Wyle v. C.H. Rider & Family (In re United Energy Corp.)*, 944 F.2d 589, 593 (9th Cir.1991).

## DISCUSSION

■ By filing a petition under Chapter 12 of the Bankruptcy Code, Debtors created an estate consisting not only of all existing legal and equitable interests in their property, *see* 11 U.S.C. §§ 301, 541(a),[3] but also of all property and earnings acquired "after the commencement of the case but before the case [was] closed, dismissed, or converted to ... chapter 7 of this title, whichever occur[red] first". 11 U.S.C. § 1207(a)(1), (2). Debtors were entitled to, and did, remain in possession of their estate and continued to operate their family farming business. *See* 11 U.S.C. §§ 1203, 1207(b).[4] They also were required to, and did, present within 90 days of the filing of their petition a plan providing for the submission of their future earnings to the Chapter 12 trustee and the payment of their creditors' claims. *See* 11 U.S.C. §§ 1221, 1222(a)(1), (2).[5]

■ Confirmation of the plan submitted had several immediate effects: it bound, *inter alios*, Debtors as well as their creditors, *see* 11 U.S.C. § 1227(a);[6] it obligated the trustee to distribute all payments to the

---

**2.** Section 522(d)(1) provides an exemption for up to $7,500 in a debtor's homestead. Section 522(d)(5) provides an exemption for up to $400, as well as up to $3,750 of the $7,500 not claimed as exempt under section 522(d)(1), in any of the debtor's remaining property.

**3.** 11 U.S.C. § 301 reads, in relevant part: "A voluntary case under a chapter of this title is commenced by the filing with the bankruptcy court of a petition under such chapter by an entity that may be a debtor under such chapter."

11 U.S.C. § 541(a) reads, in relevant part: "The commencement of a case under section 301 ... of this title creates an estate."

**4.** 11 U.S.C. § 1203 reads, in relevant part: "[A] debtor in possession shall have all the rights ... and powers, and shall perform all the functions and duties ... of a trustee serving in a case under chapter 11, including operating the debtor's farm."

11 U.S.C. § 1207(b) reads, in relevant part: "[T]he debtor shall remain in possession of all property of the estate."

**5.** 11 U.S.C. § 1221 reads, in relevant part: "The debtor shall file a plan not later than 90 days after the order for relief under this chapter...."

11 U.S.C. § 1222(a)(1) and (2) read, in relevant part: "The plan shall provide for the submission of all or such portion of future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan[, and] provide for the full payment, in deferred cash payments, of all claims entitled to priority under section 507 of this title...."

**6.** 11 U.S.C. § 1227(a) reads, in relevant part: "[T]he provisions of a confirmed plan bind the debtor [and] each creditor, ... whether or not ... [such] is provided for by the plan, and whether or not ... [the creditors have] accepted [or] rejected the plan."

creditors in accord with the plan's provisions, *see* 11 U.S.C. § 1226(a), (c);[7] and it vested in Debtors all rights in any postpetition-acquired property. *See* 11 U.S.C. §§ 1207(a), 1227(b).[8]

As both parties to this appeal have conceded, there is no controlling statutory authority or case law mandating a result one way or the other, and the legislative history of Chapter 12 is equally devoid of any guidance on this point. It is for this reason that we turn our attention to similar cases analyzed under Chapter 13.[9]

In the case of *Nash v. Kester* (*In re Nash*), 765 F.2d 1410 (9th Cir.1985), we noted that any earnings acquired by the debtors after the commencement of their Chapter 13 bankruptcy case but prior to its dismissal or conversion to Chapter 7 constituted property of the bankruptcy estate. *Id.* at 1413–14 (quoting 11 U.S.C. § 1306(a)(2)). We proceeded to hold that these postpetition earnings automatically revested in the debtors immediately upon dismissal of their case, even though the funds were in the possession of the trustee and destined for eventual distribution to creditors. *Id.* at 1414 (citing, inter alia, 11 U.S.C. § 1327(b)).

Although *In re Nash* offers at least indirect support for the argument advanced here by Debtors, there is more than one line of authority for results favorable to either party to the instant appeal. For example, in the context of cases involving conversions from, rather than dismissals

of, Chapter 13 to Chapter 7, some courts have held that *pre*confirmation-acquired property revests in the debtors. *See, e.g., Arkison v. Swift* (*In re Swift*), 81 B.R. 621, 622 (Bankr.W.D.Wash.1987). *See also In re Mutchler,* 95 B.R. 748, 750 (Bankr. D.Mont.1989) (same with respect to conversion from Chapter 12 to Chapter 7). On the other hand, some courts have held that *post*confirmation-acquired property should go to the creditors. *See, e.g., Resendez v. Lindquist,* 691 F.2d 397, 398–99 (8th Cir. 1982) (conversion from Chapter 13 to Chapter 7). *See also In re Leach,* 101 B.R. 710, 713 (Bankr.E.D.Okla.1989) (same with respect to conversion from Chapter 12 to Chapter 7).

Those courts that have ruled in favor of creditors have tended to follow the line of reasoning advanced by the majority in *Resendez, supra.*[10] Although citing several sources including the Bankruptcy Code, a (now, former) Bankruptcy Rule, the leading bankruptcy treatise, as well as published and unpublished bankruptcy cases, the majority's holding in *Resendez* may be summarized as follows: "Since the debtor voluntarily made the payments ... to a Chapter 13 trustee for the benefit of creditors, it would be unfair to permit the monies to be now claimed as exempt under his Chapter 7 proceeding on the basis that they had not been distributed to the creditors." *Resendez* at 398.

Even ignoring the criticisms to which the majority's reasoning in *Resendez* has been

---

**7.** 11 U.S.C. § 1226(a) and (c) read, in relevant part: "Payments and funds received by the trustee shall be retained by the trustee until confirmation ... of a plan.... [T]he trustee shall distribute any such payment in accordance with the plan. * * * Except as otherwise provided in the plan or in the order confirming the plan, the trustee shall make payments to creditors under the plan."

**8.** 11 U.S.C. § 1207(a) reads, in relevant part: "Property of the estate includes, in addition to the property specified in section 541 of this title[,] all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed or converted to a case under chapter 7 of this title, whichever occurs first[.]"
11 U.S.C. § 1227(b) reads as follows: "Except as otherwise provided in the plan or the order

confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor."

**9.** Chapter 13 law is instructive for questions arising under Chapter 12 because the latter was closely modelled on the former. *See, e.g., In re Samford,* 102 B.R. 724, 726 (Bankr.E.D.Mo. 1989); *In re Mutchler,* 95 B.R. 748, 751 (Bankr. D.Mont.1989); *Collier,* ¶ 1200.01[5]. *Cf.* Rule 12–2(7) of the Interim Rules and Forms for Chapter 12 Cases ("[R]eferences in Rule 1019 to a Chapter 13 case should be read also as references to a Chapter 12 case").

**10.** *But see, e.g., In re Leach,* 101 B.R. at 712 ("This Court chooses to approach this matter through yet a different line of analysis").

subjected,[11] we find Judge Bright's dissent in that case to be highly persuasive:

Prior to the confirmation of the Chapter 13 plan, creditors of the debtor have no rights in the creditors' estate. Confirmation, however, binds the creditors and the debtor to the provisions of the plan and vests all property of the estate in the debtor except as otherwise provided in the plan. The monies received by the Chapter 13 trustee from the debtors during the Chapter 13 proceeding became part of the Chapter 13 estate. The debtors' creditors acquired a nonvested interest in these monies by the plan and the order confirming the plan. A Chapter 13 creditor's interests do not vest until the monies are distributed. Because the monies here in question were not distributed, the funds became part of the Chapter 7 estate and remain subject to the debtors' exemptions. The debtors' interests in the monies have not been extinguished.

*Resendez*, 691 F.2d at 399–400 (Bright, J., dissenting) (citations omitted).

Although both *Resendez* and *In re Nash* were Chapter 13 cases, and the latter, as already noted, involved a dismissal rather than a conversion, we find no clear reason for distinguishing between dismissals and conversions on the precise question presented in this appeal. Moreover, we find Judge Bright's dissent to be consistent not only with our analysis in *In re Nash*, *supra*, but with the criticisms levelled by other courts against the majority's treatment of the issue in *Resendez*. In addition, we note that nothing in Debtors' plan as confirmed either required or even provided for the later payment by the trustee of any undisbursed funds to creditors in the event of a conversion to Chapter 7. *Cf.* 11 U.S.C. § 1227(b) (except as provided in the plan, *all* property vests in debtor). Finally, we

can see no justification for requiring a debtor to dismiss, rather than convert, his Chapter 12 case to Chapter 7 in order to preserve his exemption rights.[12] Aside from creating a trap for the unwary, such a requirement would merely elevate form over substance and inject a needless degree of extra work on the part of all concerned.

Accordingly, we hold that, under the facts of this case, postconfirmation funds held by the Chapter 12 trustee but remaining unpaid to creditors at the time the Chapter 12 case was converted to a Chapter 7 liquidation revested in Debtors at the time of the conversion.

AFFIRMED.

BRUNETTI, Circuit Judge, dissenting:

I respectfully dissent.

The majority misapplies *In re Nash*, 765 F.2d 1410 (9th Cir.1985). *Nash* involved a *dismissal* of a Chapter 13 case, not a conversion of a Chapter 13 case to a Chapter 7 case. Although the majority can find "no clear reason" for distinguishing between dismissals and conversions, one is given by *Nash* itself—the Bankruptcy Code. *Nash* relied primarily on section 349(b)(3) of the Bankruptcy Code which provides that dismissal of a case "revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case." 11 U.S.C. § 349(b)(3). This statute expressly refers only to dismissal cases and does not apply to conversion cases. Recognizing this, the *Nash* court distinguished conversion cases that had ordered funds held by the Chapter 13 trustee upon conversion be distributed according to the confirmed plan on the basis that such cases "do not address the fact that dismissal revests the property of the estate in the debtor. 11 U.S.C. § 349(b)(3)." 765 F.2d at 1414 (distinguishing *Resendez v. Lindquist*, 691 F.2d 397

11. *See, e.g., In re de Vos,* 76 B.R. 157, 159 (N.D.Cal.1987) (indirect); *McCullough v. Luna (In re Luna),* 73 B.R. 999, 1004 n. 4 (N.D.Ill. 1987); *In re Schmeltz,* 114 B.R. 607, 610 (Bankr. N.D.Ind.1990) (indirect); *Waugh v. Saldamarco (In re Waugh),* 82 B.R. 394, 399 (Bankr.W.D.Pa. 1988); *In re Redick,* 81 B.R. 881, 884 (Bankr. E.D.Mich.1987) (indirect); *In re Peters,* 44 B.R.

68, 71–72 (Bankr.M.D.Tenn.1984); *In re Bullock,* 41 B.R. 637, 641 (Bankr.E.D.Pa.1984).

12. Both parties to this appeal effectively concede that, had Debtors simply dismissed their Chapter 12 case and refiled it under Chapter 7, their exemption rights would have been preserved.

(8th Cir.1982), and *In re Giambitti*, 27 B.R. 492 (Bankr.D.Or.1983)). *Nash*, therefore, explicitly limited its holding to dismissal cases and is inapplicable here.[1]

A comparison of Bankruptcy Code section 349, which governs the effect of dismissal, and section 348, which governs the effect of conversion, evidences Congress' intent to distinguish the two means of terminating a Chapter 13 estate. Section 349(b)(3) is intended " 'to undo the bankruptcy case, as far as practicable, and to restore all property rights to the position in which they were found at the commencement of the case.' " *In re Nash*, 765 F.2d at 1414 (quoting S.Rep. No. 989, 95th Cong., 2d Sess. 49 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5835). Section 348, by contrast, includes no such revesting provision. *See Nash*, 765 F.2d at 1414 (no bankruptcy rule or Code provision contemplates the revesting of the estate property upon conversion to Chapter 7). If Congress intended conversion to have a similar effect on the property in the converted case, it presumably would have included in section 348 language similar to that found in section 349(b)(3).

Stripped of *Nash*, the majority's analysis lacks substance. Although I agree with the majority's recognition of the lack of "controlling statutory authority or case law mandating a result one way or another," I find that a common-sense interpretation of the Bankruptcy Code supports a finding that once a debtor has voluntarily given funds to the Chapter 12 trustee pursuant to a confirmed plan, the funds belong to the creditors and cannot be claimed exempt by the debtor on conversion of the case to Chapter 7.

Bankruptcy Code section 1227(b) provides that upon confirmation of the debtor's plan, all property of the estate vests in the debtor *"[e]xcept as otherwise provided in the plan or order confirming the plan."* 11 U.S.C. § 1227(b) (emphasis added). Thus, in the case at hand, because disbursement of the disputed funds was provided for in the confirmed plan, the funds expressly are excepted from vesting in the debtors. In whom, if anyone, the covered funds are vested is not specifically stated in section 1227; the negative implication of this language, however, is that property necessary to effectuate the confirmed plan does *not* vest in the debtor.

The answer—that the funds belong to the creditors [2]—can be found in other sections of the Code. The Code provides that once a plan is confirmed, "the provisions of [the] confirmed plan bind the debtor" and claimants to the terms of the plan. 11 U.S.C. § 1227(a). The trustee must "distribute any ... payments [received by the trustee] in accordance with the plan." *Id.* § 1226(a); *see also id.* § 1226(c) ("[e]xcept as otherwise provided in the plan or in the order confirming the plan, the trustee shall make payments to creditors under the plan"); *id.* § 1326(c) (mirror provision). These provisions obligate the trustee to distribute to the creditors all funds received according to the confirmed plan. This duty is not voided by the debtors' subsequent voluntary conversion.

*In re Redick*, 81 B.R. 881 (Bankr. E.D.Mich.1987)—a bankruptcy court decision directly on point—found these Code sections persuasive. *Redick* similarly in-

---

**1.** Although the reasoning of cases interpreting Chapter 13 generally should apply to cases interpreting Chapter 12, *see supra* majority's note 9, one court has found *Nash* distinguishable on this basis. The bankruptcy court in *In re Samford*, 102 B.R. 724 (Bankr.E.D.Mo.1989), stated,

[i]f followed in Chapter 12 cases, the *Nash* decision would lead to patently unfair results. In most Chapter 12 plans, payments are made on an annual basis. Creditors are held off throughout the growing season. It would be unfair to allow the debtor to voluntarily remit the proceeds from the crops to the trustee and then deny the creditors the distribution of

those funds pursuant to a confirmed Plan by simply dismissing their case. I must conclude that those funds held by a trustee, pursuant to a confirmed Chapter 12 plan, cannot be returned to the debtors, but must be distributed in accordance with the plan.

*Id.* at 726.

**2.** The alternative to possession by the debtor or creditors, that the funds belong to the Chapter 7 trustee, has been rejected by a majority of the courts. *See In re Leach*, 101 B.R. 710, 712 (Bankr.E.D.Okla.1989), and cases cited therein; *cf. Resendez*, 691 F.2d 397.

volved a Chapter 13 plan converted to a Chapter 7 plan. As in the present case, at the time of conversion, the Chapter 13 trustee possessed funds that had been paid to the trustee by the debtors prior to the date of conversion, but had not yet been distributed to creditors. *Id.* at 882. The *Redick* court, in concluding that the funds should be distributed to the creditors, gave significant weight to the trustee's statutory duty to distribute the funds according to the confirmed plan. *Id.* at 885–87. The *Redick* court likened the trustee to an "agent for the creditors." *Id.* at 887. A number of courts have followed *Redick.* *See e.g., In re Halpenny,* 125 B.R. 814, 816 (Bankr.D.Haw.1991) (creditors' right to receive funds pursuant to confirmed plan vests at time trustee receives funds); *In re Leach,* 101 B.R. at 713; *In re Burns,* 90 B.R. 301, 304 (Bankr.S.D.Ohio 1988).[3]

Section 348(e) of the Code, which provides that conversion terminates the services of the trustee of the converted case and provides for the replacement of the Chapter 12 trustee with a Chapter 7 trustee, is not contrary. The Chapter 12 trustee does not simply walk away from the case; he must, for example, file a final report and accounting of the Chapter 12 estate. *See Redick,* 81 B.R. at 886; 11 U.S.C. §§ 1202(b)(1), 704(9); Bankruptcy Rule 1019(6). I do not believe that Congress intended section 348 to have the effect of denying creditors monies, which the debtors have paid with the expectation of being distributed and which creditors are required to accept under the confirmed plan, merely because the monies had not been distributed by the trustee before conversion. Again, I agree with the *Redick* court which, similarly rejecting an argument based on section 348(e), stated:

[E]ven after the disintegration of the plan, the order confirming the plan and the trustee's status as an official "Chapter 13 trustee", the "trustee" is holding the undistributed funds as an agent for the creditors. In essence, when he received those funds from the debtor, he did so as the agent for the creditors, and so the fact that he never got around to writing out individual checks for each of them is immaterial.

*Redick,* 81 B.R. at 887. Permitting the debtors to regain the undistributed monies paid to the trustee, the *Redick* court found, would be the result of the neglect of the trustee or "[t]he mere happenstance of the delay inherent in accounting for the receipt of the debtor's wages and the preparing and mailing of checks." *Id.*

Though the delay in the present case was not due to "mere happenstance," but rather to the insufficiency of the berry crop proceeds to meet the requirements of the plan and the trustee's subsequent failure to distribute the funds pursuant to the plan, *Redick's* reasoning is still pertinent. *See also, Resendez,* 691 F.2d at 399 (it is unfair to permit funds held by the trustee to be claimed as exempt upon conversion to Chapter 7 merely because "they had not been distributed to the creditors"); *In re Leach,* 101 B.R. at 713 (determining ownership of funds based on time of disbursement by trustee would thwart the integrity of the negotiations process entered into by debtor with creditors prior to the submission of a Chapter 12 plan).

Once the debtor voluntarily pays the trustee according to the plan, the debtor cannot make a claim for the return of the payment on conversion to Chapter 7. Accordingly, I would reverse the Bankruptcy

---

**3.** *In re de Vos,* 76 B.R. 157 (N.D.Cal.1987), illustrates the significance of these sections. *de Vos* concerned the conversion of the debtor's case from Chapter 13 to Chapter 7 in 1983. The court held that the debtors were entitled to a return of the undistributed funds in the Chapter 13 estate upon conversion. *Id.* at 159. The court noted, however, that the 1984 amendment of section 1326, adding the provision that "[i]f a plan is confirmed, the trustee shall distribute any such payment in accordance with the plan,"

would have required a different result. *Id.* at 159 n. 9; *see* Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, § 318, 98 Stat. 357. "[H]ad this amendment been in effect for the case at bar," the *de Vos* court stated, "the chapter 13 trustee would have had to make payment to the creditors named in the confirmed chapter 13 plan, and not to either the debtors or chapter 7 trustee." 76 B.R. at 159 n. 9.

Appellate Panel decision and disallow the Debtors' exemption claim.