**In re Jon E. DeLUCA, Debtor.**

**Bankruptcy No. 90–33974.**

United States Bankruptcy Court,
D. New Jersey.

July 24, 1992.

Eric J. Clayman, Jenkins & Jenkins, Haddon Heights, N.J., for debtor.

Lawrence P. Blaskopf, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for I.R.S.

## OPINION

WILLIAM H. GINDEN, Chief Judge.

### INTRODUCTION

This matter comes before the Court upon a motion made by the Trustee on April 13, 1992, for an order instructing him with respect to the distribution of funds after the case had been dismissed. The Internal Revenue Service (hereinafter "I.R.S.") has served a notice of levy on the Trustee for a tax lien and the law firms of Jenkins & Jenkins and Kulzer & DiPadova have made fee applications for services rendered in the Chapter 13 case.

This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(b)(1). It is a core proceeding concerning the administration of the estate pursuant to 28 U.S.C. § 157(b)(2)(A).

### FACTS

Jon E. DeLuca (hereinafter "debtor") filed a Chapter 13 petition with this Court on September 14, 1990. Although the Chapter 13 Trustee did receive certain pre-confirmation payments, regular payments were not made in accordance with the proposed plan. On February 25, 1992, the case was dismissed before confirmation for failure to make adequate pre-confirmation payments. The Chapter 13 Trustee had

$4005.00 of undistributed pre-confirmation payments at the time of dismissal.

At the February 25 hearing, debtor's counsel, Eric J. Clayman, Esq. (hereinafter "Clayman") of Jenkins & Jenkins informed the Court that fee applications had been submitted by both debtor's counsel and debtor's special tax counsel, Kulzer & DiPadova. Specifically, debtor's counsel had made an application for fees and expenses in the amount of $3,450.90 and debtor's special tax counsel had made an application for compensation in the amount of $5,158.17.[1] In addition, a court reporter is owed $241.25 for services rendered in a 2004 examination.

At the February 25, 1992 hearing, while acknowledging that dismissal of the Debtor's Chapter 13 Plan was inevitable, Clayman expressly requested that the Court order the Trustee to hold the funds pending review and determination of the amount and reasonableness of the fee applications. In response, the Court asked debtor's counsel if he would accept usual Chapter 13 fees. Debtor's counsel informed the Court that usual Chapter 13 fees would be insufficient as the case was unusually complex, and that the application would exceed such fees. The Court ordered the Trustee to hold the funds pending fee applications and appropriate orders.

On April 1, 1992, subsequent to the dismissal but before the Court heard and determined the fee applications of counsel, the Trustee was served with a notice of levy by the I.R.S. for back taxes in the amount of $22,365.92.

On April 13, 1992 the Trustee, Robert M. Wood, filed a motion with this Court for an order instructing the Trustee with respect to distribution of funds on hand. This Court held a hearing on the Trustee's motion on May 5, 1992, at which time the Court requested further submissions from the debtor's counsel and counsel for the I.R.S. and reserved judgment. At a hearing on May 6, 1992 this Court approved Kulzer and Dipadova's fee application in the amount of $5,158.17 and Jenkins & Jenkins' application in the amount of $3,450.90.[2] The Court also directed payment of the court reporter's fee of $241.25.[3] All such charges were held to be administrative expenses of the estate pursuant to 11 U.S.C. § 503(b)(1)(A).

Presently before the Court is the issue of whether the pre-confirmation payments held by the Chapter 13 Trustee automatically revested with the Debtor upon dismissal of the case thereby subjecting the funds to the I.R.S. levy.

## DISCUSSION

Both the I.R.S. and the debtor's counsel base their arguments on the same section of the bankruptcy code, 11 U.S.C. § 349(b)(3). 11 U.S.C. § 349(b)(3) provides:

(b) Unless the court, for cause, orders otherwise, a dismissal of a case other than under section 742 of this title ...

(3) revests the property of the estate in the entity in which such property was vested immediately before commencement of the case under this title.

In its brief, the I.R.S. argues that, pursuant to 11 U.S.C. § 349(b)(3) and Local Bankruptcy Court Rule 13–1[4], unless otherwise ordered by the Court, the pre-confirmation payments to the Trustee revest with the Debtor. *See Nash v. Kester*, 765

---

1. At the February 25, 1992 hearing, Mr. Clayman informed the Court that Kulzer & Dipadova had submitted a fee application to the bankruptcy clerk on February 7, 1992. The clerk had not accepted Kulzer & Dipadova's fee application because it was not in compliance with the local rules. Subsequently, on February 28, 1992, Kulzer & Dipadova made a proper fee application. Jenkins & Jenkins made its fee application on February 7, 1992.

2. This application was approved on notice without a hearing as it totalled less than $5,000.00 and no objections were filed.

3. This application was approved on notice without a hearing as it totalled less than $5,000.00 and no objections were filed.

4. Local Bankruptcy Rule 13–1 is similar to 11 U.S.C. § 349(b)(3). It provides in relevant part:

If a chapter 13 plan is not confirmed the Standing Chapter 13 Trustee shall refund to the debtor any monies paid pursuant to the order unless otherwise ordered by the Court.

F.2d 1410 (9th Cir.1985) (wage deductions received by Trustee before dismissal of the Chapter 13 case reverted to debtors upon dismissal and should not have been distributed to creditors after dismissal). The I.R.S. maintains that debtor's counsel offered no evidence that the Court ordered the funds held by the Trustee so that fee applications could be considered. It is on this basis that the I.R.S. concludes that the funds automatically revested with the debtor upon dismissal. Hence, the I.R.S. asserts that subsequent to the dismissal it may levy on the property pursuant to 26 U.S.C. § 6331(a)[5] because the automatic stay provision of 11 U.S.C. § 362(c)(2)(B) is no longer effective.

In his brief counsel for the debtor states that at the February 25, 1992 hearing he asked the Court to have the Trustee hold all funds pending fee applications. Without providing specific case law as authority, debtor's counsel relies on 11 U.S.C. § 349(b)(3) for the proposition that the Court can "for cause" issue an order preventing the property of the estate from revesting upon dismissal. Therefore, debtor's counsel argues the Court's order to the Trustee to hold the funds pending fee applications prevents the funds from being subject to the I.R.S.' levy, as they never revested in the debtor.

Debtor's counsel concedes that there is little case law interpreting the disposition of Chapter 13 post-petition, pre-confirmation payments upon dismissal. Initially, debtor's counsel cited two cases that this court determines are inapposite to the case at bar, *In re Plata*, 958 F.2d 918 (9th Cir.1992) and *Nash v. Kester*, 765 F.2d 1410 (9th Cir.1985). Debtor's counsel focused on the dissenting opinion in *Plata* which urged that the funds be preserved for the benefit of creditors. The majority decision, however, held that the funds in possession of the Chapter 12 trustee revested with the debtor upon conversion to a Chapter 7. The dissent criticized the majority for inappropriately relying upon the *Nash* case. *In re Plata*, 958 F.2d at 922. The dissent further argued that *Nash* was decided in a dismissal context and interpreted 11 U.S.C. § 349(b)(3) rather than 11 U.S.C. § 348 which properly governs conversion. *Id.* The *Plata* dissent suggested a common sense interpretation of the code, pursuant to which funds voluntarily given to the Chapter 12 trustee under a confirmed plan belong to the creditors and cannot be claimed as exempt by the debtor upon conversion. *Id.* at 923. Debtor's counsel's argument distinguishes the result in *Plata* which involves a conversion but does not distinguish *Nash* which is relevant to the issue at hand, i.e., what is the effect of dismissal on property of the estate.[6]

The case of *Matter of Mandalay Shores Co–Op. Housing Ass'n.*, 60 B.R. 22 (Bankr. M.D.Fla.1986), however, is dispositive of the instant controversy. In *Mandalay*, the court held that dismissal of a Chapter 11 case did not divest the bankruptcy court of jurisdiction over professional fee applications where the order of dismissal provided that jurisdiction would be retained for purposes of determining allowance of fees. In the *Mandalay* case objection to the payment of fees was based on 11 U.S.C. § 349. The *Mandalay* court opined:

> The Court heard argument of counsel and is satisfied that the second proposition urged by the Debtor ... is without merit. This is so because they overlook a very important provision of Section 349, the very Section they depend on, which provides the court may condition dismissal for cause. The Order of Dismissal expressly provided that jurisdiction is retained for purposes of making a determination of the allowances of all the professionals who, under Section 330,

---

**5.** This sub-section provides, in relevant part, that:
> If any person liable to pay any tax neglects or refuses to pay the same within days after notice and demand, it shall be lawful for the Secretary to collect such tax (and such further sum as shall be sufficient to cover the expenses of levy) by levy upon all property and rights to property (except such property as is exempt under section 6334) belonging to such person or on which there is a lien provided in this chapter for the payment of such tax.

**6.** It should be noted that even accepting the funds as part of the estate, the claim for fees is, in the instant case, a priority claim which would come before the claims of general creditors.

would be entitled to an allowance. For this reason, any reliance of the objectors on section 349 is misplaced and cannot be accepted. *Id.* at 23.

In another case directly on point, *Matter of Talandis*, 95 B.R. 108 (Bankr.S.D.Iowa. 1989), the Court held that it lacked jurisdiction to consider a professional fee application after dismissal of a Chapter 11 case. The *Talandis* Court emphasized that the fee applicant "did not request the court to retain limited jurisdiction regarding his fee application in the event Debtor's case was dismissed." *Id.* at 110. As a result, the order of dismissal did not provide for the retention of jurisdiction over the fee applications. The *Talandis* Court cited *Mandalay* with approval as authority for the proposition that "[t]he court is not divested of jurisdiction over a professional fee application in a dismissed Chapter 11 case if the Order of Dismissal expressly provides that the court retains to consider the fee application." *Id.* at 109.

Clearly the *Mandalay* and *Talandis* Courts were properly exercising their discretion pursuant to 11 U.S.C. § 349. The practical effect of 11 U.S.C. § 349 has been interpreted similarly in different factual settings. In one such case, *In re BSL Operating Corp.*, 57 B.R. 945 (Bankr. S.D.N.Y.1986), the court decided that the rejection of a lease under 11 U.S.C. § 365(d)(4) does not automatically revest the lease with the debtor if the case is subsequently dismissed. *Id.* at 952. The *BSL* Court recognized that "… Section 349 is a two-edged sword. While it operates to restore property rights to their initial positions, it also enables the court to 'order otherwise for cause'." *Id.*

In the instant case, the Court specifically contemplated the issue of counsel fees at the time of dismissal. Furthermore, unlike the fee applicant in *Talandis*, debtor's counsel expressly requested the Court to retain limited jurisdiction regarding fee applications. In fact, an excerpt of the February 25, 1992 hearing[7], at which the case was dismissed, demonstrates conclusively that in consideration of the fee issue, the Court, "for cause", retained jurisdiction pending applications from Debtor's counsel and special tax counsel:

> MR. CLAYMAN: We would ask that your Honor order Mr. Wood to hold the funds until your honor has reviewed the fee application which I have submitted and also the tax firm of Kulzer and Dipadova has submitted a fee application except for the fact that the clerk's office didn't accept it.
> COURT: Alright.
> MR. CLAYMAN: So I, in fact, had asked for the fee application to be heard today but it apparently did not make the calendar—
> COURT: No, it's probably going to be set down for fee application day—
> MR. CLAYMAN: Even on Chapter 13—
> COURT: Probably, yes.
> MR. CLAYMAN: Okay, I'll ask Miss Powell[8] to—
> COURT: If it's what I have to review on that basis, I'm sorry.
> MR. CLAYMAN: Judge—
> COURT: Because—unless you are willing to settle for the usual Chapter 13 fees—
> MR. CLAYMAN: Not in this case, no.
> COURT: I wouldn't think so.
> MR. CLAYMAN: No.
> COURT: Alright.

As demonstrated by the excerpt of the February 25, 1992 hearing, the Court manifested an intent to have the pre-confirmation payments held by the Trustee subject to the fee applications. This intent is further evidenced by the Court's approval, on May 6, 1992, of the fee applications after the issue of the validity of the levy had been reserved upon.

The I.R.S. levy on the pre-confirmation payments held by the Trustee was in contravention of this Court's order that the Trustee hold the funds pending fee applica-

---

7. The excerpt was extracted from the official Court audio-tape of the hearing by Court personnel and was officially approved by the Court.

8. Ms. Powell is an employee of the bankruptcy court with the principal responsibility of administrative coordination of the Judge's calendar, including fee applications.

tions. Pursuant to 11 U.S.C. § 349(b)(3), the Court exercised its clear statutory authority to find cause to order that the funds *not* automatically revest with the debtor.

■ The I.R.S. also argues, in the alternative, that even if the Court did order that the dismissal be conditioned on the Court retaining jurisdiction to consider professional fee applications, the I.R.S. should be paid ahead of administrative expenses. This argument is likewise without merit and ignores the clear language and legislative history of 11 U.S.C. § 349(b)(3). The I.R.S. cites three cases, *Matter of Trim–X, Inc.*, 695 F.2d 296, 301 (7th Cir.1982), *In re MMS Builders*, 101 B.R. 426, 431 (Bankr. D.N.J.1989), and *In re Baum's Bologna, Inc.*, 50 B.R. 689, 690 (Bankr.E.D.Pa.1985) as support for its assertion that where a creditor has a secured claim against a debtor, administrative expenses, such as counsel fees, may not be charged against a secured claim. The instant case presents different facts and is distinguishable from the cases cited by the I.R.S.

■ Concededly, the I.R.S. has a properly perfected lien for back taxes, but this is a pre-petition lien and does not attach to the post-petition, pre-confirmation payments held by the Trustee. The filing of a bankruptcy petition creates the bankruptcy estate which is a new and different entity from the debtor. 11 U.S.C. § 541; 11 U.S.C. § 1306; *See Matter of West Electronics, Inc.*, 852 F.2d 79 (3d Cir.1988) (court held that for purposes of assignment and assumption of an executory contract the debtor and the debtor-in-possession were "materially distinct entities"). With regard to a Chapter 13 bankruptcy estate, 11 U.S.C. § 1306(a)(2) provides:

(a) Property of the estate includes, in addition to the property specified in section 541 of this title— ...

(2) earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed or converted to a case under chapter 7, 11 or 12 of this title, whichever comes first.

The automatic stay provision of 11 U.S.C. § 362(a)(4) specifically bars, "any act to create, perfect, or enforce any lien against property of the estate." The I.R.S. levy on the post-petition, pre-confirmation payments is not supported by law and is therefore void.

This Court relied on 11 U.S.C. § 349(b)(3) and dismissed the case but "for cause" retained jurisdiction for the limited purpose of awarding counsel fees that were incurred during the pendency of the Chapter 13 proceeding. Therefore, notwithstanding the order of dismissal, the post-petition, pre-confirmation payments remained property of the estate and consequently are not subject to the I.R.S. lien.

The Court's retention of jurisdiction post-dismissal was specifically contemplated by Congress as evidenced in the legislative history of subsection 349(b)(3) which states: "... Where there is a question over the scope of this subsection, the court will make the appropriate orders to protect rights acquired in reliance on the bankruptcy case." H.R.Rep. No. 595, 95th Cong., 1st Sess. 338 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6294. Debtor's counsel and special tax counsel represented the debtor in reliance on the bankruptcy case during the pendency of his Chapter 13 proceeding. Their only chance for even partial compensation originates out of the limited funds remaining in the bankruptcy estate. The Court was cognizant of this fact when, on February 25, 1992, it dismissed the case conditioned on the Trustee holding the pre-confirmation funds pending counsels' fee applications.

In conjunction with the voiding of the I.R.S.' levy, this Court approves the fee applications of the law firms of Jenkins & Jenkins, Kulzer & DiPadova and the court reporter. Jenkins & Jenkins sought fees in the amount of $3,450.90, Kulzer & DiPadova sought fees in the amount of $5,158.17, and the court reporter sought $241.25 for services rendered in connection with a 2004 examination. As determined on a pro rata basis, Jenkins & Jenkins shall receive $1,561.62, Kulzer & DiPadova shall receive $2,334.21, and the court reporter shall receive $109.17.

## CONCLUSION

In the present case the Court expressly retained jurisdiction for the purpose of determining fee allowances. Therefore, the I.R.S.' levy is void and counsel for the debtor shall submit an order consistent with this opinion within ten days.